RUFF v. WOMACK.

Opinion delivered October 3, 1927.

1. STATES—AUTHORITY TO LEND MONEY TO SCHOOL DISTRICTS.—Acts 1927, p. 358, §§ 2, 3 and 4, authorizing the State to borrow money from permanent school fund on non-interest-bearing bonds, and by §§ 5 and 9, authorizing the State Board of Education to loan money thus obtained to needy school districts, is not contrary to Const., art. 16, § 1, forbidding the State to loan its credit for any purpose whatever, since the State merely uses its credit for a proper purpose.

2. STATES—ASSUMING DEBTS OF CORPORATION.—Acts 1927, p. 358, providing that the State shall borrow money from the permanent school fund, and that the State Board of Education may loan money obtained to school districts on security, even if authorizing the State to assume the debts of school districts, is not contrary to the Const., art. 12, § 12, prohibiting the State from assuming the debts of any county, town or other corporation, the corporations referred to being private corporations or those engaged in private enterprises.

3. SCHOOLS AND SCHOOL DISTRICTS—DIVERSION OF SCHOOL MONEY.—Acts 1927, p. 358, providing that the State shall borrow money from the permanent school fund, made up largely of proceeds of the sales of sixteenth sections, and that the State Board of Education may loan moneys obtained to needy school districts, is not contrary to Const., art. 14, § 2, providing that no moneys belonging to the State for the benefit of schools shall be used for other than their respective purposes.

4. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY TO DISTRICTS TO VOTE SINKING FUNDS.—Acts 1927, p. 365, § 6, authorizing electors of school districts to vote a sinking fund to be levied each year until the money borrowed is repaid, is not contrary to the Const. art. 14, § 3, as amended Oct. 5, 1926, providing that the General Assembly may authorize school districts to levy by vote of electors a tax not exceeding 18 mills on the dollar in any one year.

5. CONSTITUTIONAL LAW—DISCRIMINATION.—The Revolving Loan Fund Law, Acts 1927, p. 358, empowering the State Board of Education to lend money to some school districts and to refuse

to loan to others, and to charge some districts greater rate of interest than others, is not unconstitutional because discriminating, in view of Crawford & Moses' Dig., §§ 8993, 8999.

6. SCHOOLS AND SCHOOL DISTRICTS—VALIDITY OF REVOLVING LOAN FUND LAW.—Acts 1927, p. 358, providing that the State shall borrow money from the permanent school fund, formed largely by selling land granted to townships for schools by the Federal Government, and that the State Board of Education may lend money so obtained to needy school districts, is not invalid as freeing the State from the obligation to invest the money received by the sale of lands granted to the townships in a productive fund; the State being the sole judge of the best method of carrying out the purposes of the grant, so long as the proceeds are used for school purposes, it being invested in a productive fund.

7. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.—The Revolving Loan Fund Law providing for the sale of State bonds by the State Debt Board, for the purpose of borrowing money from permanent school fund, and for lending the money obtained to needy school districts by the State Board of Education, is not invalid as delegating legislative powers to either of these boards, as the power conferred is merely that of enforcing the law after making investigations.

Appeal from Pulaski Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

*William L. Baugh, Jr.,* for appellant.

*H. W. Applegate,* Attorney General, *John H. Caldwell,* Assistant, and *Utley, Hammock & Clark,* for appellee.

HUMPHREYS, J. This is an appeal from the decree of the chancery court of Pulaski County sustaining the demurrer to and dismissing appellants' complaint against appellees, which sought to permanently enjoin them from taking any steps or doing anything looking to the enforcement of act No. 119 of the General Assembly of 1927, known as the revolving loan fund law, upon the ground that said act is void.

The purpose and intent of the act in question is to create a 'revolving loan fund to be borrowed from the permanent school fund and loaned to needy school districts, to repair, erect and equip necessary school buildings, and to pay outstanding indebtedness on buildings already erected and equipment already purchased. The

act is lengthy, and we deem it unnecessary to set it out in order to determine the questions involved on the appeal.   Section 2 of the act provides that the State.shall sell its own bonds and use the proceeds to discharge its debt to the permanent school fund.   Section 3 provides that, immediately after the cancellation of so much of the State's debt to the permanent school fund as can be retired by the proceeds of the sale of bonds authorized by § 2, the State shall immediately reborrow from the permanent school fund on new non-interest bearing State bonds for the purpose of creating said revolving loan fund. The same arrangement is made in § 4 of the act for the use of the cash on hand to the credit of the permanent school fund the first of July in each year.   Section 5 of the act empowers the State Board of Education to make loans out of the revolving fund to needy school districts, under certain restrictions.   Section 9 provides that loans made to school districts shall be secured by the bonds of the district which does the borrowing, the whole debt of the borrowing school district to be secured by mortgage on its physical property, together with the pledge of the sinking fund created for the purpose of paying the loan and interest.

The first reason alleged and urged in support of the invalidity of the act is that it authorizes the State to lend its credit to school districts which secured loans thereunder, contrary to § 1 of article 16 of the State Constitution.   The constitutional inhibition is that the State shall not lend its credit for any purpose whatever. There is nothing in this inhibition to prevent the State from using its credit for proper purposes.   If the State could not use its credit for governmental purposes, a situation might arise where it could not function.   In considering this section of the Constitution, our court has sanctioned the right of the State to borrow money to pay obligations incurred by governmental agencies, as well as money with which to construct a highway system. *Hayes* v. *McDaniel, Treasurer,* 130 Ark. 52, 196 S. W. 934; *Bank of Commerce* v. *Huddleston,* 172 Ark. 999, 291 S. W. 422; *Bush* v. *Martineau, ante* p. 214.   Certainly, if

it can be said that the construction and mainte-
nance of highways throughout the State is a proper pur-
pose for which the State may use its credit, it may be said
with equal propriety that the education of the children of
the State is also a governmental purpose for which the
State may use its credit. In fact, article 14 of our Con-
stitution recognizes the importance of the education of
the young children of the State, and imposes the duty
upon the Legislature to provide for a public school
system. Section 1 of said article is as follows:

"Intelligence and virtue being the safeguards of
liberty and the bulwark of a free and good government,
the State shall ever maintain a general, suitable and
efficient system of free schools whereby all persons in
the State between the ages of six and twenty-one years
may receive gratuitous instruction."

The education of the young people of the State, then,
is distinctively a governmental and proper purpose for
the use of the State's credit. In using its credit to
obtain money to lend to needy school districts for the
purposes mentioned in said act, is not in any sense lend-
ing its credit.

The next reason alleged and urged in support of the
invalidity of the act is that it authorizes the State to
assume and pay debts which are prohibited under article
12, § 12, of the State Constitution. That section prohibits
the State from assuming or paying the debts or liabilities
of corporations unless such debts or liabilities shall have
been created to repel invasion, suppress insurrection,
and to provide for the public welfare or defense. If
reborrowing the permanent school fund on non-interest
bearing bonds of the State for the purpose of lending the
money to needy districts upon security could be char-
acterized as assuming the debt of needy school districts,
the prohibition would have no application to school dis-
tricts. Corporations referred to in the section are
private corporations, or corporations engaged in private
enterprises. *Bank of Commerce* v. *Huddleston,* and *Bush*
v. *Martineau, supra.*

The next reason alleged and urged in support of the invalidity of the act is that it violates § 2, article 14, of the Constitution of the State, which is as follows:

"No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs."

The contention is that the permanent school fund is made up largely of proceeds of the sale of the sixteenth section lands which were granted by Congress and accepted by the State for the use and benefit of the inhabitants of the townships in which said sections were situated, and that in providing that the fund may be loaned to needy school districts indiscriminately constitutes a diversion of the fund and violates said section of the Constitution. The question was settled adversely to the contention of appellant by this court in the case of *Sloan* v. *Blytheville Special School District,* 169 Ark. 77, 273 S. W. 397, in which statutes were upheld as constitutional directing that the funds arising from the sales of the sixteenth section school lands be credited to the permanent school fund of the State rather than to the fund of the school district in which the sixteenth section was situated.

The next reason alleged and urged in support of the invalidity of the act is that it violates the eighteen-mill school tax amendment to the State Constitution, which is as follows:

"The General Assembly shall provide by general laws for the support of common schools by taxes, which shall never exceed in any one year three mills on the dollar on the taxable property in the State, and by an annual per capita tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years. Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed eighteen mills on the dollar in any one year, for the maintenance of schools, the erection and

equipment of school buildings and the retirement of existing indebtedness for buildings. Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.''

The contention is that article 14, § 3, of the Constitution, as amended October 5, 1926, contemplates an annual vote and tax levy, whereas § 6 of act 119 authorizes the electors of the school district in their vote, in order to apply for a loan, to vote a sinking fund to be levied for collection each succeeding year until the money borrowed by the district from the revolving loan fund, together with all interest thereon, shall be paid. We find no prohibition in the amendment against the Legislature authorizing the electors in school districts to vote a continuing levy. The prohibition is that the tax shall not exceed eighteen mills on the dollar in any one year.

The next reason alleged and urged in support of the invalidity of the act is that it is discriminating in that it empowers the Arkansas Board of Education arbitrarily to grant aid to some districts and to withhold it from others, and to charge one district a greater rate of interest than it charges another. We find nothing in the Constitution inhibiting the Legislature from conferring this power upon the State Board of Education. Really there is no discrimination, because the income or interest derived from the loans to the several needy districts must be placed in the common school fund for equal distribution to the school children of the State per capita, as directed in §§ 8993 and 8999 of Crawford & Moses' Digest, with the exception of a very small per cent. set aside for carrying the act into effect.

The next reasons alleged and urged in support of the invalidity of the act are that it frees the State from the obligation in the grant of the sixteenth section lands to invest the proceeds thereof in some productive fund, and authorizes the State to make a profit on the permanent school fund. Neither contention is tenable. Under the rule announced in the Sloan case, *supra,* the State is the sole judge of the best method of executing

the grant, as long as it uses the proceeds for school purposes. But, aside from this rule, we think lending the principal of the permanent school fund through the route of the revolving school loan fund on secured interest-bearing bonds amounts to an investment thereof in a productive fund in full compliance with the grant. We do not agree with appellant's interpretation of the act to the effect that it enables the State to make a profit on the permanent school fund. It is true that the act authorizes the State to substitute its own bonds for the permanent school fund in order that same may be converted into a revolving loan fund, but the act authorizes the State Board of Education to lend the revolving loan fund thus created to needy school districts upon well secured interest-bearing bonds. The interest derived therefrom, less a small per cent. for the administration of the fund, must be paid, under the provisions of the act, into the common school fund for distribution per capita among the schoolchildren of the State.

In view of what we have said, we think there can be nothing in the contention of appellant to the effect that act 119 makes a gift of the permanent school fund to the various school districts, so we pass that objection without further comment.

The next and last reason alleged and urged in support of the invalidity of the act is that it constitutes a delegation of legislative powers to the State Debt Board and the State Board of Education. The power or authority conferred upon these State agencies by the act in question is one of enforcement of law after making certain investigations, and is not a delegation of legislative powers. *Howard* v. *State,* 154 Ark. 430, 242 S. W. 818.

No error appearing, the decree is affirmed.

KIRBY, J., dissents.