CHARLES B. CHAPPELL, appellee, v. BOARD OF DIRECTORS OF IN-
DEPENDENT SCHOOL DISTRICT OF CITY OF KEOKUK, appel-
lant; BOARD OF SUPERVISORS et al, defendants.

No. 47459.

(Reported in 39 N.W. 2d 628)

NOVEMBER 15, 1949.

REHEARING DENIED JANUARY 13, 1950.

Boyd & Huiskamp, of Keokuk, for appellant.

R. Buell Smith, of Keokuk, for appellee.

OLIVER, J.—The voters of the Independent School District of Keokuk voted a schoolhouse tax for a term of ten years. After two years plaintiff brought this action to enjoin the further annual certification and levy of the tax. The trial court granted the injunction as prayed and defendant Board of Directors has appealed.

Chapter 278, Code of Iowa 1946, (except as otherwise stated all references herein are to the 1946 Code) is entitled "Powers of Electors." Section 278.1 provides in part:

"Enumeration. The voters at the regular election shall have power to:
"* * *

"7.   Vote a schoolhouse tax, not exceeding two and one-half mills on the dollar in any one year, for the purchase of grounds, construction of schoolhouses, the payment of debts contracted for the erection of schoolhouses, not including interest on bonds, procuring libraries for and opening roads to schoolhouses."

Code section 277.2 permits this to be done at a special election also.

Under Code section 278.1 the voters of the Independent School District of Keokuk adopted the following proposition:

"Shall the Board of Directors of the Independent School District of the City of Keokuk, Lee County, Iowa, be authorized to levy not to exceed two and one-half mills on the dollar in any one year for the purchase of grounds, construction of schoolhouses, the payment of debts contracted for the erection of schoolhouses, not including interest on bonds, procuring libraries for and opening roads to schoolhouses for a period of ten years."

It will be noted this authority is permissive—the directors are *authorized*. This authority empowers the directors, at their discretion, to levy an amount not exceeding two and one-half mills in any one year.   The authorization is limited to a period of ten years. If in any year within this period, the directors decide to levy (certify) a tax under this authority, the same

must be set up in their budget and certified to the county auditor. The Local Budget Law (chapter 24) requires such budgets to be subjected to a hearing thereunder. The record shows the Board of Directors each year adopted and certified a resolution to levy a schoolhouse tax amounting to two and one-half mills and the Board of Supervisors levied the two-and-one-half-mill tax accordingly. The question here is whether section 278.1 empowers the voters to vote a schoolhouse tax for more than one year.

I. Omitting some words and parts not here essential the language of the statute is: "voters * * * vote * * * tax, not exceeding two and one-half mills on the dollar in any one year, for * * *." The phrase "in any one year" modifies "exceeding" and is a part of the larger phrase "not exceeding two and one-half mills on the dollar in any one year", with which it is enclosed by commas. The entire larger phrase modifies "tax." The only limitation the language of the statute places upon this tax is that it must not exceed two and one-half mills in any one year. There is no express or implied limitation in the number of years. Moreover, the phrase "in any one year" negatives such a limitation. Had it been the legislative intent that the tax could be voted for one year only, there would have been no necessity for the phrase "in any one year." With this phrase omitted the statute would read: "voters * * * vote * * * tax, not exceeding two and one-half mills * * *," and would be open to the interpretation that only one such tax, not exceeding two and one-half mills, could be voted at an election. That is precisely the interpretation plaintiff would give the statute with the phrase included. Under such interpretation the phrase "in any one year" would be of no effect and thus would be read out of the statute. It is well-settled that, if reasonably possible, a statute should be construed to give effect to every part of it. In re Guardianship of Wiley, 239 Iowa 1225, 34 N.W. 2d 593; Moulton v. Iowa Emp. Sec. Comm., 239 Iowa 1161, 34 N.W. 2d 211. Considering all the language of the statute in its ordinary meaning we conclude it should be interpreted as not limiting the power of the voters to voting a tax for one year only.

That construction was given a like provision in Ruff v.

Womack, 174 Ark. 971, 975, 976, 298 S.W. 222, 224. An amendment (No. 11) to the Constitution of Arkansas stated in part:

"* * * Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed eighteen mills on the dollar in any one year, for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings."

The court answered the contention that this "contemplates an annual vote and tax levy" as follows: "We find no prohibition in the amendment against the Legislature authorizing the electors in school districts to vote a continuing levy. The prohibition is that the tax shall not exceed eighteen mills on the dollar in any one year."

II. Plaintiff asserts the legislative intent must be determined as of the time of the original passage of the act, when the state "was comparatively primitive—there were no substantial schools and very few large cities"; that in recent years, school districts in the greater populated areas of the state have resorted to a use of this statute not contemplated by the legislature originally enacting it—that of asking for authority to certify the tax for more than one year without approval by the voters at the election of each year of certification; that it is evident the bonding powers of such districts are claimed to be not large enough for their evident desires and by this means they hope to build up a reserve to be added to the total limit of bonded indebtedness. Plaintiff then poses the question: "Can this be construed as the intent of that original legislature?"

The "act" is Code section 278.1 which enumerates the powers of the voters. By "its original passage" plaintiff evidently refers to the section of an act of the Second General Assembly (chapter 80, section 39), subsequently codified as section 1115, Code of 1851. It empowered the qualified electors of the district, when assembled, among other things (paragraph 5) to lay such tax as the meeting shall deem sufficient for schoolhouse purposes, libraries and contingent expenses, "provided, however, that said tax shall not exceed one and one-half per cent on the taxable property aforesaid in any one year." These and other provisions

relative to the powers of the electors since then have been repeatedly modified, repealed and replaced with new and different enactments. Related statutes also have been repealed and supplanted with new and, frequently, substantially different statutes.

Under the Code of 1851 the school district meetings (then held regularly twice per year) were in the nature of town meetings. The electors assembled at the meeting place and there transacted and directed much of the business of the school district. The only notice required was a general notice of the regular or special meeting. School districts were not authorized to issue bonds. There was already a tax of from one half to one and one-half mills levied by the county judge for the support of the schools (section 1152, Code of 1851) and the electors at each meeting were empowered to "lay such [schoolhouse] tax * * * as the meeting shall deem sufficient." Among other things they were empowered also "to transact generally such business as may tend to promote the cause of education", under the statute (paragraph 9 of section 1115, Code of 1851).

With population increases this direct method of operation later became impractical and the town meeting method was gradually discarded and was supplanted by the election method at which the electors vote by ballot or by voting machine upon such propositions only, if any, as have been previously ordered submitted. Today each school district in the larger centers operates numerous schools. Many districts spend millions of dollars per year. In some districts building and improvement operations are in progress much of the time. It should not be presumed that the changes in the statutes were not made, at least in part, to meet changed conditions.

· ▮▮▮ We do not agree that the intent of the various legislatures in making the drastic procedural changes and other substantial changes in statutes concerning the powers of school electors and in related statutes should be measured by the intent of an earlier legislature. In re Guardianship of Wiley, 239 Iowa 1225, 34 N.W. 2d 593, cited by plaintiff as so holding, merely holds the recital in the preamble of an amendatory act, claimed to show the intent of the former legislature, is not binding on the courts. The rule here applicable is that quoted in Benschoter v. Hakes, 232 Iowa 1354, 1359, 8 N.W. 2d 481, 485:

" 'An amended act is ordinarily to be construed as if the original statute had been repealed, and a new and independent act in the amended form had been adopted in its stead; * * *.' "

Hence, the legislative intent in making subsequent enactments should be considered in the light of the circumstances attendant at the times of the new enactments and not as of 1851.

On that account the dicta in early decisions cited by the parties are of little assistance. The only decision of this court which refers to the question presented by this case is Kirchner v. Board of Directors, 141 Iowa 43, 49, 118 N.W. 51, in which the court refused to hold the vote invalid simply because the electors voted a larger amount than could be levied in any one year, but stated the question whether the Board of Supervisors would have authority to make a maximum levy from year to year until the entire amount voted was realized, was not properly before the court.

We revert to plaintiff's assertion that school districts in the areas of greater population have been using this statute to secure authority to certify the tax for more than one year. The record shows this statement is correct and that at the time this case was tried sixteen city school districts of the state were levying and collecting a schoolhouse tax voted for periods of from three to ten years. This practice has been widespread. It was considered in an opinion, at page 587, of the Report of the Attorney General for 1911-12. Apparently it has had departmental approval. At page 38 of a book of instructions compiled by the state comptroller for the year 1949, as required by Code section 444.7 and issued "for use of county auditors and all local tax officials", it is stated:

"278.1. School House Fund. Not more than 2½ mills when so voted by the electors of the district at the regular or special election. The proceeds of such tax to be used for the purchase of grounds, construction of schoolhouses and the payment of debts contracted for the erection of schoolhouses. Par. 7. *The proposition should state the number of years the tax is to run.*" (Italics supplied.)

Pamphlets for previous years contain the same statement. It instructs school districts how to vote taxes under section 278.1 for terms of years and, in effect, invites them to do so.

Plaintiff suggests certain city districts use this method to avoid exceeding the limit of their bonded indebtedness. This was the situation in at least one city in which a schoolhouse tax for a term of years and a bond issue were voted on the same ballot to pay for proposed buildings and additions when the same should be constructed. However, a schoolhouse tax is not a debt. It is merely a means of paying debts or meeting obligations on a pay-as-you-go basis. There is no statute permitting school districts to issue certificates or bonds secured by the pledge of future installments of a tax as was the case in Brunk v. City of Des Moines, 228 Iowa 287, 291 N.W. 395, 134 A.L.R. 1391. The practice has been to vote a schoolhouse tax, either with or without an accompanying bond issue, as a part of a comprehensive building plan. Frequently the plan calls for the use of the money from the schoolhouse tax as fast as it is received and the schoolhouse tax method of financing is employed because it saves interest which would accrue if bonds were issued. But, the failure to use the money immediately should not invalidate the tax any more than if the fund were proceeds from the sale of bonds.

III. Plaintiff contends it was the intention of the legislature that the schoolhouse tax be used to provide for the annual needs of the district of the nature listed in section 278.1(7) and that bonds be voted and issued when the needs were greater. This contention assumes the legislature did not intend to provide two methods for procuring funds which could be used for the same purpose. It overlooks analogous statutes. Code section 276.24 provides for the submission to a vote of the electors of a consolidated school "the question of voting a tax or authorizing the board to issue bonds, *or both*, for any or all of the following purposes:

"1. To secure a site, build or equip a schoolhouse.

"2. To build a superintendent's or teacher's house.

"3. To repair or improve any school building or grounds, when the cost will exceed two thousand dollars." (Italics supplied.)

There the legislature authorized the financing by a bond issue or by a schoolhouse tax or by a combination of both. Al-

though that statute applies to consolidated districts it indicates the legislature appreciated the advantages of these optional separate or combined methods of raising money for the schoolhouse fund. It does not seem reasonable the legislature would have a contrary intent as to section 278.1.

The statutory methods provided for procuring funds for schoolhouse sites or grounds furnish another analogy. They are (1) A schoolhouse tax voted by the electors under section 278.1. (2) A tax voted by the directors under section 297.5. (3) A bond issue. We are unable to agree with the assumption the legislature intended that the use of the schoolhouse tax be limited to the annual needs of the district.

IV. It is suggested the voting of a schoolhouse tax for a number of years would tie the hands of the taxpayers at future elections. On this point the case of Burkhead v. Independent Sch. Dist., 107 Iowa 29, 77 N.W. 491, is cited. That case holds one board of directors cannot divest future boards of the power to select teachers by making long-time contracts to be performed in the future. The rule of the cited decision and other like cases concerns contracts made by officers or official bodies chosen to represent the public and not the electors themselves. In the absence of provisions to the contrary, taxpayers have the right to temporarily tie their own hands, if voting to authorize their representatives to levy a tax for a number of years may be said to have that effect. However, we do not think it has that effect any more than would the authorizing of a bond issue for a term of years. Moreover, the suggestion that the hands of the taxpayers would be tied overlooks the rule of law that, generally speaking, the voters at any regular election or special election called for that purpose may order the tax terminated or modified. Hibbs v. Board of Directors, 110 Iowa 306, 308, 81 N.W. 584, 48 L.R.A. 535; Kirchner v. Board of Directors, 141 Iowa 43, 118 N.W. 51; note in 79 A.L.R. 438; Barclay v. School Township, 157 Iowa 181, 187, 138 N.W. 395.

We have already stated the language of the statute authorizes the voters to vote a continuing levy. None of the other propositions discussed herein suggests a different interpretation. The judgment of the distinguished trial court is based upon a

contrary interpretation. Hence, the case is reversed.—Reversed.

HAYS, C. J., and BLISS, GARFIELD and MULRONEY, JJ., concur.

HALE, WENNERSTRUM, SMITH and MANTZ, JJ., dissent.

HALE, J. (dissenting)—I feel that I must dissent from the majority opinion in this case.

The question for determination here is whether, under said section, 278.1, Code of 1946, the voters have been given power by the legislature to authorize certification, levy and collection of the tax not to exceed two and one-half mills on the dollar for a period of more than one year. Plaintiff-appellee contends that the statute is intended to meet the usual annual needs of a school district. Defendant-appellant contends that the statute gives authority to build up a surplus or reserve in addition to the power in a school district to issue bonds when approved by the voters and that the tax may be levied for any reasonable number of years upon being approved by the voters at one election.

I. In the case of a tax statute, where the legislative intent or meaning is doubtful, such statute, unless a contrary intention appears, is to be construed against the government or the tax levying bodies and in favor of the taxpayer or citizen. Clark, Dodge & Co. v. City of Davenport, 14 Iowa 494, 500; Curtis v. Michaelson, 206 Iowa 111, 118, 219 N.W. 49; Merchants Supply Co. v. Iowa Employment Sec. Comm., 235 Iowa 372, 16 N.W. 2d 572, and cases cited; 51 Am. Jur., Taxation, section 316; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, 213; Moorman Mfg. Co. v. Iowa Unemployment Compensation Comm., 230 Iowa 123, 296 N.W. 791; Great Northern R. Co. v. Board of Supervisors, 197 Iowa 903, 196 N.W. 284.

II. Construing the statute as to the intent, we should bear in mind the principles of construction above stated. The statute is one subsection of section 278.1, which section relates to the powers of the voters at the annual March meeting. Except as therein stated, the general affairs of the district are usually administered by the directors. The power granted in subsection 7 is for revenue raising and seems to be intended to provide for the ordinary annual needs for the purposes enumerated, which will, of course, vary from year to year. When the ordinary methods of raising ordinary funds seem inadequate, in addition to

levies for general funds, and other funds are necessary which will require taxes to be levied over a considerable period for school building needs, section 298.21, Code of 1946, provides for the issuance of bonds when authorized by the voters "at the regular election or at a special election called for that purpose." There is also a provision authorizing the board of directors to certify a tax of one mill, as well as a tax for general purposes.

The fund for general purposes and the fund for the purchase of building sites being thus provided for as above set out, it would not seem reasonable that another section would be necessary, running year after year as a permanent fund, like a fund raised by bonds, but rather a fund to be provided in case of need or where the regular annual funds were insufficient. Two Code provisions for the same purpose would hardly be the intent of the legislature, nor does it seem reasonable to believe that the legislature intended that the fund of two and one-half mills each year was to be used to create a surplus which could be drawn upon at will or for some contingency, at the time of levy unknown, and which fund might be voted at one time by the voters at any election regardless of the wishes of the voters at some future election. The electors in future elections—the taxpayers in subsequent years—have the right to determine at the time of the regular election the present needs of their schools and it is so provided by the subsection under consideration. The voters have this power at each regular election. It follows that under defendant's construction the voters would be deprived of the exercise of that power at the annual election in each subsequent year, and such power should not be taken away from them for a period of ten or more elections. Interpreted as argued by defendant, if the tax is voted for a longer period than one year it would be an attempt to tie the hands of the taxpayers at future elections, with no limit as to the number of future years. Burkhead v. Independent Sch. Dist., 107 Iowa 29, 77 N.W. 491, cited in Independent Sch. Dist. v. Pennington, 181 Iowa 933, 165 N.W. 209.

III. It is true that in the Burkhead case the statute referred to has since been modified, authorizing schoolteachers' contracts in certain cases for longer periods by express authority of statute, as now amended. However, the Pennington case quotes

from the Burkhead case (page 937 of 181 Iowa) the following:

"'An examination of the statutes leads to the inevitable conclusion that the legislature intended such contracts to be limited in duration to the school year as determined by the board of directors. If not so limited, then the directors might employ teachers for any number of years, tie up the hands of their successors in office, and wrest from the control of the people the schools which they are required to support. The spirit of these statutes is repugnant to the idea that one board of directors, by contract wholly to be performed in the future, can divest future boards of the power to select teachers and make contracts therefor, and indirectly take from the people all the advantages to be derived from annual elections.'"

If true as to the board of directors it is equally true as to the electors at an annual election who are permitted to speak as to the matters enumerated in subsection 7 of section 278.1 only once each year.

Defendant argues that the tax may be levied under the statute for a reasonable number of years, but who will say what will constitute the number of years which shall be reasonable, and who can prophesy what may be the needs of the district for each future year? Such a construction is an invitation to future litigation, instead of being clear and decisive.

IV. It is argued as to the words "for a period of ten years", which do not appear in the statute but which were used in the ballot at the regular election, that since no such words were in the statute the legislature purposely intended to omit any period of time so that the period might be provided in the ballot at the discretion of the board of directors, asking the authority of the voters to levy the tax. Far from being such a discretion vested in the voters, it is more likely to be an omission purposely intended. Great Northern R. Co. v. Board of Supervisors, supra, and cases cited.

The statute is silent. There is nothing to indicate the vesting of any discretion as to the years. By its silence it indicates that it was not intended that any additional period of years be allowed beyond the current year. We should not look beyond the words of the statute for any additional grant of authority.

See In re Guardianship of Wiley, 239 Iowa 1225, 34 N.W. 2d 593, and cases cited.

The district judge in the case at bar aptly said: "If the legislature had intended it [the tax] to be levied for a longer period than one year, it would certainly have been the simplest matter in the world to have stated so."

In the opinion of the district judge it is further said: "The legislature, by placing subsection (7) in the section it did—the section that enumerates the powers the electors have at the annual election—and by remaining silent as to the number of years the levy could be made, placed a limit of one year thereon. In other words, it granted all the powers it intended to grant." With this statement we agree. See Burkhead v. Independent School District, supra.

V. Defendant argues that the construction of the statute as it urges herein has been applied by a number of districts in the state, and in some cases has had departmental approval. This is probably true and we do not doubt that departmental practice may be considered, but such approval may not overcome what we consider the purpose and intent of the law. Of course there is no record of the very large number of districts that have made no attempt to apply it at all other than annually. The rule as to departmental approval is fully stated in the case of United States v. Dickson, 15 Pet. (U.S.) 141, 160, 10 L. Ed. 689, 697:

"It has been also argued, that the uniform construction given to the act of 1818, ever since its passage, by the treasury department, has been, that the act has reference to the fiscal year. The construction so given by the treasury department to any law affecting its arrangements and concerns, is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a court of justice. The construction given to the laws, by any department of the executive government, is necessarily *ex parte*, without the benefit of an opposing argument, in a suit where the very matter is in controversy."

See also Prudential Ins. Co. of America v. Green, 231 Iowa 1371, 2 N.W. 2d 765, 141 A.L.R. 1401.

VI. Defendant devotes considerable space to the recital of the reasons and motives for the imposition of the ten-year levy. There seems to be no reason why the motive should be considered. The power to issue bonds up to the legal limit is possessed by the district, and the grant by the legislature of the right to an annual tax of two and one-half mills is granted to the electors, but the powers of the district are limited by the legislative grant of authority.

VII. The construction argued by the defendant is adopted in the majority opinion. As noted herein, I cannot concur in the reasoning, nor do I think that the case cited sustains the view of the majority opinion. Therein cited is the case of Ruff v. Womack, 174 Ark. 971, 298 S.W. 222. In considering the meaning of a constitutional provision it is argued that a provision of the constitution authorizing a school district to levy by a vote of the qualified electors of such district a tax not to exceed eighteen mills on the dollar in any one year for the maintenance of schools, that this was no prohibition against the legislature authorizing the electors to vote a continuing levy, but the tax in the Arkansas case was a different form of tax. It constituted a general school tax which would naturally continue from year to year until changed. The difference is that the present tax under consideration seems to be an emergency tax and not, I think, to be intended to be a continuing general tax. Otherwise, the legislature would have said so.

The construction of section 278.1 should be construed in connection with other sections and chapters as to school purposes, notably chapters 296, 297 and 298. Chapter 296 requires an election before an indebtedness may be incurred in excess of one and one-fourth per cent of the assessed value of the taxable value of the property within the corporation, for buildings and sites of schoolhouses, and for issuing bonds for financing same.

Chapters 297 and 298 have extended provisions and safeguards for acquisition of sites and the building and repairing of schoolhouses, and the manner of financing such projects. These chapters are clearly designed to provide for financing over periods of time greater than one year, but section 278.1 seems intended on the other hand for current matters, including provision in paragraph 7 for any unusual current financial needs

for schoolhouse purposes. To construe section 278.1(7) as intended by the majority opinion and as argued by defendant would result in permitting the board to build up a fund over a period of years to be used for some future and unknown, or at least unrevealed, schoolhouse purpose, and to avoid the safeguard these other sections provide before such purposes can be carried out.

I am satisfied that the words "in any one year" limit the power of the voters in any one year, and that they do not have the effect of permitting a grant of power to levy an annual tax over a period of years. A levy of such annual tax would not require such language since the annual levy would, of course, be the same each year.

I am unable to agree with the views of the majority in the construction of section 278.1(7).

SMITH, MANTZ, and WENNERSTRUM, JJ., join in this dissent.

WENNERSTRUM, J. (dissenting)—The conclusions reached by the majority opinion and the reasoning used to attain the desired results are foreign to my theories of the province of this court. I, therefore, respectfully dissent, and in so doing concur in Judge Hale's dissent.

I. The result reached and the effect of the majority opinion amounts to judicial legislation. This is not the duty of this or any other court. Neither is expediency or desirability a matter that should be considered by it. That is a matter for the legislature. The statement made in the case of In re Estate of Hagan, 232 Iowa 525, 529, 5 N.W. 2d 856, 859, is applicable to the situation presented in the instant case:

"The job that confronts this court is to interpret the statutory law as it is written. If the law as written is not satisfactory to the people, they have a right to have it changed, but that change must be made by the legislative branch of our state government and not by judicial construction."

II. The majority opinion apparently gives much weight to the fact that sixteen city school districts have followed the practice sought to be utilized by the appellants. A further basis for favorable consideration by the majority opinion is the fact

that certain state officials have looked with favor upon this procedure. If we are to carry this reasoning to its logical conclusion we can have legislative repeal by extensive violation of a statute aided and abetted by departmental approval. Unfortunately I am old fashioned enough to feel that legislation should not be repealed by noncompliance or by judicial interpretation. The courts should be the one branch of our government that should seek to prevent such a growing tendency. The opinion contends that because of other changes made in the school laws the prior construction given to the statute is obsolete. Courts cannot repeal acts of the legislature by declaring them obsolete. Peverill v. Department of Agriculture, 216 Iowa 534, 536, 245 N.W. 334.

HALE and MANTZ, JJ., join in this dissent.