The Honorable Steve Bryles State Senator 514 W. Main Blytheville, AR 72315
Dear Senator Bryles:
I am writing in response to your request for my opinion on the following questions:
 1. [P]ursuant to the agreement between the Burdette School and Blytheville PSS dated in 1972 [sic], can the Blytheville PSS limit the future use of the Burdette School property?
 2. [C]ould ownership of the property be returned to the town of Burdette and the town then lease or sell the property to another group for the operation of a private school?
RESPONSE
With respect to your first question, I believe that so long as it retains ownership, the Blytheville PSS [the "District"] can limit use of the property in any manner that is not arbitrary and capricious and that is supportable on any rational basis. Determining whether this standard has been met is a question of fact I am neither equipped nor authorized to address. With respect to your second question, I believe the District is barred from simply donating the property to the city. However, I believe the District may sell the property to the city if doing so is consistent with the standard just recited. Finally, I believe the city might lease or sell the property for adequate consideration.
Question 1: [P]ursuant to the agreement between the Burdette School andBlytheville PSS dated in 1972 [sic], can the Blytheville PSS limit thefuture use of the Burdette School property?
I have indirectly addressed this particular issue in the enclosed Ark. Op. Att'y Gen. No. 2000-270, in which I summarized the pertinent factual background as follows:
 [T]he Blytheville School District No. 5 of Mississippi County, Arkansas annexed the Burdette School District No. 35 in 1971, under the authority of A.S.A. 80-418 [Acts 1947, § 1]. As a condition of the annexation, the Blytheville School District agreed to "guarantee to the present Burdette School District No. 35, that it will operate a grade school of at least grades one (1) through six (6) at the present Burdette School District site at Burdette, Arkansas, for as long as such a grade school operated at Burdette is, in the eyes of the Arkansas State Department of Education, economically feasible and educationally justified[.]" This condition was stated in a school board resolution, as well as on the ballot title when the annexation was presented to the voters. You state that the Blytheville School District now plans to close the Burdette site and build a new school in Blytheville, which the children who formerly attended the Burdette site will attend.
In my previous opinion, I concluded that the District in its expanded form had the legal authority to close the Burdette grade school even though the agreed conditions for doing so recited in the annexation agreement had not been met. In support of this conclusion, I explained: "The Arkansas Supreme Court has held that school boards can contractually bind their districts and the inhabitants thereof only in instances in which they have been given express statutory authority to do so. SeeBrown v. Gardner, 232 Ark. 197, 334 S.W.2d 89 (1960)." Without reproducing my previous analysis, I will simply note here that no school district can contract away its statutory power and obligation to determine on an ongoing basis the location of schoolhouses within the district. See A.C.A. §§ 6-13-620(1) and (3).
I have reviewed the annexation documents attached to the request that led to my issuance of Ark. Op. Att'y Gen. No. 2000-207. Each of these documents (which were produced in 1970 and 1971, not 1972) contains nothing more than the above summarized conditional pledge to continue operation of the Burdette grade school and a general pledge that, following annexation, the students of former Burdette School District No. 35 will be given "the same educational privileges and opportunities" as will students residing in the then existing Blytheville School District No. 5. I concluded in Opinion No. 2000-207 that the former of these pledges was unenforceable because it was unauthorized by statute. For the same reasons set forth in my previous opinion, I believe the latter pledge is enforceable only to the extent it can be interpreted as memorializing the substance of A.C.A. § 6-13-620(13), which directs each school board to "[d]o all other things necessary and lawful for the conduct of efficient free public schools in the district," and Ark. Const. Art. XIV, § 1, which directs that "the State shall ever maintain a general, suitable and efficient system of free public schools." See Ark. Op. Att'y Gen. No. 94-068 (opining that local tax revenues raised for school districts contribute to meeting the state's obligations under Ark. Const. Art. XIV, § 1).
As I noted in Opinion No. 2000-270:
 The Arkansas courts have long interpreted this statute [A.C.A. § 6-13-620] as allowing school boards wide latitude in governing their districts. See, e.g., Safferstone v. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley, 210 Ark. 580, 197 S.W.2d 39
(1946). See also Springdale Board of Education v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); Leola School District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905 (1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id. The court in Leola, supra,
explained "arbitrary and capricious" action by a school board as being action that is not supportable "on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence. Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
It is somewhat difficult for me to apply this standard to your particular question because I am uncertain precisely what you mean by the phrase "limit the future use of the Burdette School property." I can opine that the District, in its considerable discretion regarding the location and operation of schools, see Opinion No. 2000-207, is empowered to close the Burdette grade school so long as doing so does not impair "the conduct of free public schools in the district." In practical terms, this means that students who would formerly have attended the Burdette grade school must have reasonable access to a comparable public school — a factual condition I am unable and unauthorized to determine obtains in the present case. I can venture no more than to suggest that any other limitation on the use of the property must likewise be reasonably related to the end of providing "efficient free public schools in the district," subject to the condition that a particular school board cannot presume to fetter the discretion of successor boards in the operation of the district. See Opinion No. 2000-207. Finally, I should note that the District is empowered by statute to sell, rent or exchange the property, presumably for whatever use the recipient intends, if doing so is reasonably related to the goal of providing efficient free public schools. A.C.A. § 6-13-620(3).
Question 2: [C]ould ownership of the property be returned to thetown of Burdette and the town then lease or sell the property toanother group for the operation of a private school?
Determining whether the school district could convey the property to the town of Burdette would entail applying the standard set forth in my response to your previous question. However, if by the phrase "be returned" you mean "be donated," I believe making such a gift would clearly run afoul of Ark. Const. art. XIV, § 3, which provides that no tax levied to support a school district "shall be appropriated for any other purpose nor to any other district that that for which it is levied."[1] See Ark. Op. Att'y Gen. No. 88-176 ("It appears that the only restriction upon the school board's discretion in the area of expenditures is to ensure that local tax money be used for the purposes and in the district in which it is levied. (See Arkansas Constitution Art. 14, 3)." As one of my predecessors noted in interpreting this restriction:
 The Arkansas Supreme Court in addressing this provision has held that any use of school funds that results in benefits to school funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion. Magnolia School District No. 14 v. Arkansas State Board of Education, 303 Ark. 666, 799 S.W.2d 791 (1990), citing Rainwater v. Hays, 244 Ark. 1191, 428 S.W.2d 254 (1968). The court in Magnolia also cited Taylor v. Matthews, 75 S.E. 166 (1912), which had previously been cited with approval in Board of Education of Lonoke County v. Lonoke County, 181 Ark. 1046, 29 S.W.2d 268
(1930), for the following proposition:
 But while the expenditure of public school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as trustees of the school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school entrusted to their charge. Likewise, we are willing to give broad discretion to those charged with the proper maintenance of our schools.
 303 Ark. at 670, citing 75 S.E. 166.
 As can be seen from the language above, the court has held that expenditure of school funds must be "confined to public schools" and "absolutely necessary" for proper maintenance of the school (in the discretion of the directors). Additionally, the court in Magnolia has stated that the expenditure must result in benefits to school funds or property or aid in the stated purposes for which the funds may be expended.
In my opinion, once a school district in its discretion has closed a school, it would be difficult to describe as "absolutely necessary for" the maintenance of efficient public education giving that school building away so that others might establish a private school that competes for students within the district.
Moreover, any donation of the property to the city would likely further offend Ark. Const. art. XVI, § 11, which provides:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
This constitutional provision clearly applies both to the voter-approved school district tax authorized in Ark. Const. art. XIV, § 3 and to the school fund tax revenues referenced in Ark. Const. art. XIV, § 2. In my opinion, the constitutional provision just quoted clearly dictates that any school district property purchased with tax revenues be devoted exclusively to public education, subject only to the district's discretionary power to sell the property for adequate consideration if doing so would benefit the district.
Finally, regardless of its intended use, I believe giving the property to the city might well be precluded by operation of A.C.A. § 14-169-803, which provides:
 Any school district owning lands and buildings within the boundaries of any existing urban renewal project or neighborhood development program, or within the boundaries of any such project or program that may be constituted in the future, is authorized to donate and dedicate to the governing board of any such urban renewal program or neighborhood development project as may be created any surplus lands or buildings owned by it if the lands or buildings are found by the board of the school district to be surplus to its present needs or the lands and buildings are unsuitable for further use by the school.
Several principles of statutory interpretation apply in considering this statute. First, as the Supreme Court noted in Arkansas County v. DeshaCounty, 342 Ark. 135, 140-41, 27 S.W.3d 379 (2000):
 Our basic rule of statutory construction is to give effect to the intent of the legislature. See Rosario v. State, 319 Ark. 764, 769, 894 S.W.2d 888 (1995). We must give effect to that intent by making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993). Where the statutes are unambiguous, we construe them by looking to all laws on the subject, viewing them as a single system, and giving effect to the general purpose of the system. See Citizens to Establish a Reform Party in Arkansas v. Priest, 325 Ark. 257, 265-66, 926 S.W.2d 432 (1996) (citing Hercules, Inc. v. Pleader, 319 Ark. 702, 894 S.W.2d 576 (1995); Pace v. State Use Saline County, 189 Ark. 1104, 76 S.W.2d 294 (1934)).
Second, as the court stated in Gazaway v. Greene County EqualizationBd., 314 Ark. 569, 575, 864 S.W.2d 233 (1993): "The phrase expressiounius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. ArkansasPower Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale,281 Ark. 390, 663 S.W.2d 930 (1946).
The application of these principles leads me to conclude that the legislature did not intend to authorize the donation of school district property to a city. On its face, A.C.A. § 14-169-803 authorizes a school district to donate property only to an urban renewal project or a neighborhood development program, and only then if the property lies within the project or program boundaries and the district deems the property surplus or unsuitable for school use. In my opinion, implicit in this very narrowly tailored authorization is a converse proscription, discernible by application of expressio unius est exclusio alterius,
against any other variety of gratuitous conveyance of school district property.
By contrast, I believe the District would be authorized under appropriate circumstances to sell the property to the city. As previously noted, school districts are authorized by statute to sell, rent or exchange their property. A.C.A. § 6-13-620(3). However, I believe the authority to sell the property is not absolute, but bounded by the wide yet nevertheless limited discretion discussed in my response to your first question. Even if the District's school board were legitimately to deem the property unsuitable surplusage that should be sold, it might still be under a fiduciary duty to advertise and to bid out the sale, rather than selling privately to the city as one step in a plan to establish a private school.
With respect to the city's proposed sale or lease of the property for the establishment of a private school, municipalities are expressly authorized by statute to sell or to lease public property. A.C.A. §14-54-302. Subsection (a) of this statute provides in pertinent part:
 This power and authorization shall extend and apply to all such real estate and personal property, including that which is held by the municipal corporation for public or governmental uses and purposes.
In my opinion, this power is conditioned only upon the sale or lease being supported by adequate consideration. See Ark. Ops. Att'y Gen. Nos.2001-083, 2000-147, 99-408, 98-025 and 97-250. Determining the adequacy of consideration will obviously entail a factual inquiry of the sort I am neither authorized nor equipped to conduct. I will note, however, that the Arkansas Supreme Court has held that in certain circumstances "public advantage" can constitute adequate consideration. See City of Blythevillev. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). Although the Burdette city council might be inclined to characterize as a "public advantage" locating a grade school in town, I remain concerned that the school would be private and in competition with the public school district that now includes Burdette. Given this fact, I harbor some doubt that establishing the private school would constitute a "public advantage" that would warrant a sale or lease at below market value. However, I am not prepared formally to opine on this issue, which can only be resolved after a careful consideration of all the facts.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] On various occasions in the past, my predecessors have intimated that donations by school districts might further implicate Ark. Const. Art. XIV, § 2, which provides:
 No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
See, e.g., Ark. Ops. Att'y Gen. Nos. 89-264, 90-330, 91-315 and 91-411. In more recent opinions, I have expressed doubt that money or property controlled by a school district can properly be characterized as "belonging to the public school fund" or "belonging to . . . this State."See Ark. Ops. Att'y Gen. Nos. 99-417 and 2000-270. I continue to subscribe to the following analysis from Opinion No. 99-417:
 [W]hen Article 14 is read as a whole, its purpose appears to have been to create a public school system, supported by public funds. The Arkansas Supreme Court has seemed to read the reference to public funding in Article 14 as being a reference to a single central source of funding, available to individual school districts. This view is reflected in an early case involving Article 14, § 2, Ruff v. Womack, 174 Ark. 971, 298 S.W. 222 (1927) (interpreting Article 14 as imposing a duty upon the legislature to maintain a public school system, and finding that this duty constitutes a proper purpose for which the state may use its credit by lending to individual school districts from the state's public school fund).
 . . . [I]n the cases in which Article 14, § 2 has been invoked, the Arkansas Supreme Court has seemed to assume (without discussing the issue) that the reference to "the public school fund" was a reference to a single common fund, held either by the state or by the county for the benefit of all schools within their jurisdictions. See, e.g., Magnolia School Dist. 14 v. Ark. St. Bd. of Educ., 303 Ark. 666, 799 S.W.2d 791 (1990) (funds held by state); Dermott Spl. School Dist. v. Brown, 253 Ark. 222, 485 S.W.2d 204 (1972) (funds held by county); State Board of Education v. Aycock, 198 Ark. 640, 130 S.W.2d 6 (1939) (funds held by state); Walls v. State Board of Education, 195 Ark. 955, 116 S.W.2d 354 (1938) (funds held by state); State Ex Rel. Atty. Gen. v. State Board of Edu., 195 Ark. 222, 112 S.W.2d 18 (1937) (funds held by state); Board of Education of Lonoke Cty. v. Lonoke Cty., 181 Ark. 1046, 29 S.W.2d 268 (1930) (funds held by county); Ruff v. Womack, 174 Ark. 971, 298 S.W. 222 (1927) (funds held by state); Sloan v. Blytheville Special School District No. 5, 169 Ark. 77, 273 S.W. 397
(1925) (funds held by state). Indeed, in Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968), the Arkansas Supreme Court specifically stated that Article 14, § 2 "prohibits the use of money or property belonging to the state school fund for any other than the purpose to which it belongs." Id. at 1195 (emphasis added).
 The only cases in which it has even been intimated that Article 14, § 2 could apply to money or property owned by individual school districts were not decided on the basis of that provision, but rather, on the basis of Article 14, § 3 (which prohibits the use of school tax proceeds for non-school purposes), or on statutory grounds. See, e.g., Fayetteville School Dist. v. Arkansas State Bd., 313 Ark. 1, 852 S.W.2d 122 (1993) (analyzing issue under Art. 14, § 3); Rainwater v. Haynes, 244 Ark. 1191, 428 S.W.2d 254 (1968) (analyzing issue primarily under Art. 14, § 3); Scott V. Magazine Sp. School Dist. No. 15, 173 Ark. 1077, 294 S.W. 365 (1927) (holding that school district's board had statutory authority by statute to sell school district's property).
 Although it is not entirely clear whether a common school fund, held and administered by the state or the counties, existed at the time of the adoption of the Arkansas Constitution, it is clear that the current "Public School Fund," authorized by A.C.A. § 6-20-203 et seq., has a long history of predecessor funds that date at least to 1897. For a discussion of the history of the public school fund, see State Board of Education v. Aycock, 198 Ark. 640, 130 S.W.2d 6 (1939). A common fund of this nature may have been what the drafters of Article 14, § 2 envisioned in using the phrase "public school fund."