MERCHANTS SUPPLY COMPANY, Appellant, v. IOWA EMPLOYMENT
SECURITY COMMISSION, Appellee.

No. 46535.

DECEMBER 12, 1944.

Smith, O'Connor & Thomas, of Dubuque, for appellant.

F. D. Riley, of Des Moines, and Robert L. Larson, Assistant Attorney General, for appellee.

HALE, J.—Appellee agrees that the statement of the case and the statement of the facts as set out by appellant are correct and we therefore set them out herein as a statement of the controversy before us.

Merchants Supply Company appealed to the district court from a decision of the Iowa Employment Security Commission fixing its 1943 contribution rate under the Iowa Employment Security Act (chapter 77.2, Code of 1939, as amended) at 2.7 per cent, claiming said rate should be .9 per cent. In computing the said contribution rate under the formula presented in section 1551.13(C), Code of 1939, the Commission included the "gross" pay roll of Merchants Supply Company, whereas it is the contention of said company that the same should be limited to the "taxable" pay roll. The district court, sitting as a court of equity, affirmed the decision of the Commission. The questions presented by this appeal are whether in computing the employers' contribution (or rate of tax) under the formula prescribed in section 1551.13(C), Code of 1939, the term "average annual pay roll" means the total or gross pay roll of the employer or that part of the pay roll which is taxable under the Iowa Employment Security Act. And if it means gross pay roll, is it constitutional?

The pay roll facts of Merchants Supply Company are undisputed and are correctly set forth in the following table:

"MERCHANTS SUPPLY COMPANY
Wholesalers
Sixth and Iowa Streets
Dubuque, Iowa
ESTABLISHMENT OF CONTRIBUTION RATE
for Calendar Year 1943

| Average Annual Payroll 3 years | A Gross | B Taxable | C Over $3,000 |
|---|---|---|---|
| 1940 | 14,885.65 | 13,675.92 | 1,210.03 |
| 1941 | 23,025.15 | 17,815.08 | 5,210.07 |

|  | A | B | C |
|---|---|---|---|
| 1942 ...................... | 51,506.57 | 25,348.53 | 26,158.04 |
|  | 89,417.37 | 56,839.53 | 32,578.14 |
| Average Annual Payroll...... | 29,805.79 | 18,946.51 |  |
| Total Contributions Paid as of December 31, 1942.......... | 2,315.47 | 2,315.47 |  |
| Total Benefits paid charged to your account December 31, 1942 ..................... | 351.24 | 351.24 |  |
| Excess of Contributions over Benefit Payments .......... | 1,964.23 | 1,964.23 |  |
| Ratio of excess of Contributions over Benefit Payments to Average Annual Payroll.... | 6.5% | 10.3% |  |
| Contribution Rate for year 1943 | 2.7% | .9%" |  |

Column A in above table shows the rate and method of computation as fixed by the Commission and affirmed by the trial court. Column B shows the rate and method of computation which appellant contends is correct under the Iowa law. The foregoing computation is based on section 1551.13(C)3 and (C)4, Code of 1939. The size of the fund and the amount of benefits paid therefrom are of such amounts that section, 1551.13(C)5, Code of 1939, has no application to the determination of a proper rate for Merchants Supply Company for 1943.

Merchants Supply Company's tax rate is to be computed on a three-year-average pay roll and not a five-year-average pay roll. (Section 1551.25(A)2; Code of 1939.)

The propositions relied upon by appellant for reversal are:

1. The controlling rule of construction is that a tax measure must be construed against the taxing body.

2. Chapter 100, Acts of the Forty-ninth General Assembly of Iowa, amended sections 1551.13(C), 1551.25(A), and 1551.25(M) so that "wages" and "pay roll" as used therein exclude amounts paid to any one employee in excess of $3,000 in any one year.

3. Construction of act which determines experience rate on basis of gross pay roll makes section 1551.13(C)3 and (C)4 unconstitutional as a violation of the due-process, equal-protection-of-law, and uniformity requirements of the Iowa and United States Constitutions.

The issue in this case is whether, in computing the contribution rate of the employer, the term "average annual pay roll" means the gross or total pay roll of the employer or only that part of the pay roll which is taxable. If the contribution is based on the average gross annual pay roll, then the rate of 2.7 per cent established by the Commission is correct. If the average annual pay roll means only that part of the pay roll which is taxable, then the rate of contribution for 1943 should be established at .9 per cent. The solution of this question requires a construction of the unemployment statute.

What is known as the Iowa Employment Security Law was enacted by the Forty-sixth Extra General Assembly and has since been amended several times. The object of and guide to the interpretation of the statute are found in section 1551.08, Code of 1939. In general, the intention was to provide protection against unemployment by encouraging employers to provide more stable employment and by accumulating funds during periods of employment to provide benefits for periods of unemployment, and the intention is declared to be for the public good and general welfare of the citizens of the state. In its present form the statute consists of twenty subdivisions. Sections 1551.09 to 1551.12, inclusive, provide for the administration and manner of operation of the law, as do most of the other sections.

In considering the present case, however, we are most concerned with section 1551.13 relating to the payment of contributions by the employer to the unemployment fund. Subsection A of that section originally provided:

"On and after July 1, 1936, contributions shall accrue and become payable by each employer with respect to wages payable for employment as defined in section 1551.25 subsection 'G' occurring during such calendar year except that for the six months period beginning July 1, 1936, such contributions shall accrue and become payable solely from employers with respect to wages

payable for employment occurring on and after July 1, 1936. Such contributions shall become due and be paid to the commission for the fund at such time and in such manner as the commission may prescribe.''

This provision of the Code was amended by chapter 99, Acts of the Forty-ninth General Assembly, which provided that the law as it appears in subsection A of section 1551.13 should be amended to make the contribution of each employer only on that part of the wages up to and including the sum of $3,000. This amending statute was repealed, and chapter 100, Acts of the Forty-ninth General Assembly, was enacted, going into effect April 17, 1941. This latter amending statute repealed paragraph 1, subsection A of section 1551.13, and chapter 99 above referred to, and enacted in their stead the statute as it now is, and since that time has remained, with a few slight changes made by chapter 101, Acts of the Forty-ninth General Assembly.

The section now provides, in conformity with the Federal Unemployment Tax Act [26 U. S. C., section 1607(b) (1)], that the wages on which contributions are payable are limited to $3,000 to any one employee in any one calendar year. The new law, chapter 100, Acts of the Forty-ninth General Assembly, contains the provision which is the subject of controversy here as follows:

''*For the purposes of this section* the term 'wages' shall not include that part of the remuneration which, after remuneration equal to three thousand dollars ($3,000) has become payable to an individual by an employer with respect to employment during the calendar year * * *.''

Therefore, as stated by appellant, the question raised by this appeal is the construction and effect to be given to the language used in said chapter 100, which limits wages to the first $3,000 paid to any one employee in any one year. Appellant contends that chapter 100 limits average pay roll to average annual *taxable* pay roll as distinguished from average annual *gross* pay roll. The amount of contribution to the unemployment fund by each employer is found in subsection C of said section 1551.13 and the weekly benefit amount for total unemployment is prescribed

in section 1551.09. Subsection C referred to provides that there should be a separate account for each employer and his contribution credited therein but benefits paid are charged against the account of the most recent employer. The rate is further prescribed by subsection C in paragraphs 3, 4 and 5 thereof. The rate of contribution of each employer depends upon his benefit experience, this depending upon the ratio of the excess of contributions of benefit payments to *average annual pay roll*, as shown by the schedule heretofore set out. That is, the rate is determined on the basis of his record up to the beginning of each calendar year. Paragraph 4, subsection C, section 1551.13 prescribes the formula for determining the benefit experience or merit rating of an employer, under which formula the rate depends upon the ratio the excess of contributions of the employer over benefits charged to his account bears to his *average annual pay roll*.

Section 1551.25, subsection A, paragraphs 1 and 2, defines pay roll and average annual pay roll as follows:

"1. 'Annual pay roll' means the total amount of wages payable by an employer * * * during a calendar year.

"2. 'Average annual pay roll' means the average of the annual pay rolls of any employer for the last three or five years, whichever average is higher."

Section 1551.25 (M) defines wages as "all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash."

The point of contention between appellant and appellee is that since the amendatory act, chapter 100, Acts of the Forty-ninth General Assembly, states that wages shall not include any wages in excess of $3,000, then wages, as defined in section 1551.25 (M), must mean the taxable wages, that is, wages of $3,000 or less, and that annual pay roll would mean the total amount of taxable wages paid by an employer during the calendar year. Appellee, however, contends that the modification of section 1551.13 by the amending act did not affect the remainder of the section or the definitions of wages or annual pay roll. This is the point of the controversy, which is, the effect of the amenda-

tory act, chapter 100, Acts of the Forty-ninth General Assembly. Was that effect limited only to subsection A of section 1551.13?

I. Appellant devotes its first and second divisions of argument to the effect of chapter 100, Acts of the Forty-ninth General Assembly, asserting that a tax measure must be construed against the taxing body; and that said chapter not only amended subsection A of section 1551.13, but also affected and amended sections 1551.13(C), 1551.25(A), and 1551.25(M).

We have recently decided that tax measures are construed against tax levying bodies. Moorman v. Iowa Unemployment Comp. Comm., 230 Iowa 123, 296 N. W. 791. Also, Palmer v. State Board, 226 Iowa 92, 283 N. W. 415, and cases cited.

Appellant also argues that words used in an amendment which are used in the original act are presumed to be used in the same sense in the amendment as in the original act. This, of course, is true. See 59 C. J. 1095, 1096.

It is urged that the Iowa Employment Security Act is to be construed as a whole and its various provisions are to be viewed in the light of their relation to the whole. Iowa Pub. Serv. Co. v. Rhode, 230 Iowa 751, 298 N. W. 794. There is not much doubt regarding this proposition as to the construction of statutes.

Based on the foregoing propositions appellant would have said chapter 100 modify the term "wages," as used in sections 1551.13(C), 1551.25(A), and 1551.25(M), since chapter 100 was the later enactment, and asserts that wherever the word "wages" is used therein it has the same meaning as though it read "taxable wages." And, therefore, for the purpose of interpretation and definition, appellant would have section 1551.25(A) read:

"A. 1. 'Annual payroll' means the total amount of taxable wages payable by an employer (regardless of the time of payment) for employment during a calendar year; provided that on and after January 1, 1941, the term 'annual payroll' shall mean the total amount of taxable wages paid by an employer during a calendar year for insured work, and provided further that any taxable wages paid after December 31, 1940, for insured work performed on and prior to December 31, 1940; shall

be credited to the annual payroll of the year in which such work was performed.

"2. 'Average annual payroll' means the average of the annual payrolls of any employer for the last three or five years, whichever average is higher."

It is argued that the word "section" in chapter 100 refers not only to subsection A but the entire section 1551.13. Since section 1 of the amendatory act repealed paragraph 1 of subsection A, "section" could mean, then, either section 1551.13 or section 1 of chapter 100; that in repealing the subsection the legislature knew the difference between the words "section" and "subsection" and that when it used "section" in the substitute provision it could not have intended the subsection or paragraph 1 thereof; and that had it meant otherwise the words used would have been "for the purpose of paragraph 1 of *subsection* A of section 1551.13."

On the other hand, appellee argues that no different definition of wages was intended by the legislature. The title states that chapter 100 is an act to repeal paragraph 1 of subsection A of section 1551.13, Code of 1939, and Senate File 89 of the Forty-ninth General Assembly. Appellee asserts that no other provision of section 1551.13 was repealed, or intended to be repealed, except that part of the repealed statute relating to and providing for payment of contributions by emp'oyers on wages and defining the term "wages" *as used in said section,* and that the word "wages" in the title refers to the term as used in paragraph 1 only, and that this was so defined solely for the purpose of reducing the employers' tax base to the first $3 000 of wages paid, but does not purport to nor does it change the formula established for the employers' rate for the benefit features of the act found in section 1551.13(C) thereof, and that the tax-rate formula was not amended or affected by said amendatory chapter. Section 1551.25 contains the definition of terms used in the Employment Security Act and defines "wages" as all remuneration, and further states that such will be its meaning as used in the chapter unless the context clearly requires otherwise. Does the context of the amended subsection A

clearly require that the definition of "wages" contained in such subsection A be applied to other sections or subsections?

The word "section" has been variously defined. It has been construed to mean a provision, a separate and separable clause, sentence, or provision, not necessarily a separately numbered clause; a subdivision, or subsection, although an entire act sometimes may be referred to by the use of the term. 56 C. J. 1273, 1274. See, also, 38 Words & Phrases, Perm. Ed., 450. The word has been held to apply to a subdivision, a distinct part or portion, the division of a law or other writing or instrument, a part separate from the rest, the subdivision of a chapter, a paragraph. As used the word could therefore be applied to the whole section or to a subdivision. The meaning is not fixed or certain but must be used in the sense it was intended by the legislature. State ex rel. Ekern v. Zimmerman, 187 Wis. 180, 204 N. W. 803; Spring v. Collector of City of Olney, 78 Ill. 101. See State v. Scales, 172 N. C. 915, 920, 90 S. E. 439, 441, where the court states:

"Again, in the third classification in the act of 1915, the word 'section' is used in such connection as to indicate clearly that it is confined to that subdivision, thus furnishing additional evidence that the General Assembly was referring to the subdivisions in the use of the word."

In State ex rel. Burnham v. Babcock, 23 Neb. 128, 134, 36 N. W. 348, 350, it is said:

"In the case at bar section 25 is subdivided into seven different parts, each of which treats of distinct powers of the county board. In fact they are seven sections, as much so as the other sections in the chapter, although classified as subdivisions of section 25."

In Ex parte Pea River Power Co., 207 Ala. 6, 7, 91 So. 920, is found the following:

"We think that the word 'section' as used in section 34 of the act of 1911 does not mean an entire numeral section, but a separate and separable clause, sentence, or provision."

In the case at bar the legislature explicitly referred to the one section. This appears also from the fact that chapter 100 was enacted by the legislature as a substitute for chapter 99 and the former subsection A. The wording shows it was not intended to cover additional subjects. We are satisfied that the use of the word for the purpose of this section was not intended to apply to any subsection of section 1551.13 except subsection A. If the legislature intended to change the merit rating under subsection C, or the definitions of pay roll and wages in section 1551.25, it could have plainly so said, and to carry to these subsections the definition for another section, and for the purposes of that section only, would be going beyond the intent of the legislature. To hold that the other definitions of wages and pay roll are changed by the enactment of chapter 100 would be to repeal these definitions by implication since they are not in any way expressly referred to by the legislature in enacting said chapter 100. Repeals by implication are not favored, and especially so when a construction by this court would amount, as it would here, to legislation upon a subject regarding which the legislature has remained silent and has expressed no intention of making any change.

The Forty-ninth General Assembly, by enactment of chapters 101 to 106, inclusive, made additions to and changes in the employment-security law. Chapter 101 amended the definition of "annual pay roll" but continued the use of the words "total amount of wages," and also continued the definition of "wages" as in the original subsection except that it struck the word "payable," leaving the definition to read: " 'Wages' means all remuneration for personal services," etc. It made no attempt to include the word "taxable" or any similar term, as appellant urges these subsections should be construed. Later the Fiftieth General Assembly enacted various amendments to the statute, including chapters 69 to 78, inclusive, but in none of these amending chapters was there any suggestion of a change in the definitions of total pay roll or wages. Thus, while for two sessions following the issuance of the Code of 1939 the legislature was actively engaged in amending various parts of the said law and the chapter was under its consideration, the definitions and the method of computing the tax were not changed.

382

We are satisfied that when the legislature said "for the purpose of this section" it referred to the substituted chapter 100, and that only by the use of the word "section" as meaning something to which the plain purpose of the amendment did not apply would we be able to construe chapter 100 as applying to the definitions of "annual pay roll" and "wages" found in sections 1551.25(A)(1) and (2) and 1551.25(M). It is our conclusion therefore that these definitions were unchanged by said amendment.

II. Appellant contends that the construction of the act which determines the experience rate on the basis of the gross pay roll makes section 1551.13 a violation of the due-process, equal-protection-of-the-law, and uniformity requirements of the Iowa and United States Constitutions. It is contended that the gross pay roll construction of the statute makes a rate which is discriminatory, unreasonable, arbitrary, and unjust; that this results in a lack of uniformity; and that the difference in rate, which is supposed to rest on benefit experience, in fact rests on the fact that some employees are paid wages in excess of the amount that is taxed. Cited are: 16 C. J. S. 1338, 1343, 1344, section 648, as to due process; 16 C. J. S. 1042, 1052, section 520, as to equal protection; and 16 C. J. S. 913, 920, section 464, 16 C. J. S. 971, section 497, and 16 C. J. S. 940, section 478, as to uniformity requirements.

We are not convinced that the construction we hold to be proper violates any constitutional requirements. The legislature has wide discretion in classifying and distributing the tax burden. One of our recent decisions is Sandberg Co. v. State Board, 225 Iowa 103, 278 N. W. 643, 281 N. W. 197. This was a supplemental opinion on petition for rehearing and was a tax case against the Board of Assessment and Review on taxation of material used in repairing shoes. The question of constitutionality was raised and this court said that laws relating to taxation, as well as all other laws of a general nature, must have a uniform operation to meet the requirements of constitutional provisions, but that the courts have long since recognized that in the matter of taxation perfect uniformity is impossible of perfect application. It was held that the legislation was not arbitrary, but

uniform. To the same effect, see Madden v. Kentucky, 309 U. S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590, 125 A. L. R. 1383. Also, McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 350, 108 N. W. 902, 33 L. R. A., N. S., 706, where it is held that the mere fact that legislation is special and made to apply to certain persons, and not to others, does not affect its validity if it be so made that all persons affected by its. terms are treated alike, under like circumstances and conditions. Citing cases. And in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 71, 78, 79, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160, it is held that the equal-protection clause of the Fourteenth Amendment does not take from the state the power to classify in regard to police laws, but admits of the exercise of a wide scope of discretion in that regard and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; and that a classification having some reasonable basis does not offend against that clause merely because it results in some inequality.

In State Board of Tax Commrs. v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 1255, 1256, 73 A. L. R. 1464, it is stated that the restriction that the power of taxation shall not be so exercised as to deny to any the equal protection of the law does not compel the adoption of an iron rule of equal taxation nor prevent variety of differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, callings, or occupations. It is not the function of the court to consider the propriety or justness of an occupation tax, or seek for the motives or criticize the public policy which prompted its imposition. In Vilas v. Iowa State Board, 223 Iowa 604, 273 N. W. 338, an income-tax law was held not unconstitutional because it exempted domestic corporations, and not individual partnerships and fiduciaries, from paying a tax on that part of their income derived from activities carried on outside the state, or because the graduate rate of tax is not uniform between corporations, individuals, and partnerships. To the same effect, see Great A. & P. Tea Co. v. Grosjean, 301 U. S. 412, 424, 57 S. Ct. 772, 81 L. Ed. 1193, 112 A. L. R. 293; and Chamberlin, Inc. v. Andrews, 271 N. Y. 1, 2 N. E. 2d 22, 106 A. L. R. 1519; id., 299 U. S. 515, 57 S. Ct. 122, 81 L. Ed. 380, a case involving an unemployment-insurance law.

Cook v. Hannah, 230 Iowa 249, 297 N. W. 262, was a mandamus proceeding to compel the refund of certain taxes. It was held that the legalizing act pleaded by defendants (chapter 250, Acts of the Forty-eighth General Assembly) did not violate the equal-protection or uniform-operation clauses of the constitution. It is stated in State v. Erickson, 225 Iowa 1261, 282 N. W. 728, that the test with regard to requirements of due process is simply whether the law operates equally upon all who come within the class to be affected, embracing all persons who are or may be in like conditions or circumstances. The case of Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, was an appeal under the Alabama Unemployment Compensation Act. Among other matters, it was held that neither the due-process nor equal-protection clauses impose upon a state any rigid rule of equality of taxation, and inequalities which result from the singling out of a single class for taxation or exemption infringe no constitutional limitation, and a statute imposing a tax on employers for the benefit of an unemployment-compensation fund is not arbitrary and invalid because it fails to distinguish between the employer with a low unemployment experience and the employer with a high unemployment experience. Pickelsimer v. Pratt, 198 S. C. 225, 17 S. E. 2d 524, is also a case under an employment-compensation act which upholds the general rule that the presumption must be indulged in favor of the constitutionality of the statute. Among other matters, the court upheld the requirement of the provision of the law in regard to experience rating and held that the act is not violative of the equal-protection and due-process clauses of the State and Federal Constitutions.

Under the rules discussed in the foregoing cases, cited and argued by appellee, it seems clear that the section, construed as we now hold it to be, is not in violation of any constitutional provisions of either the Iowa or United States Constitutions.

It is not our province to determine the merits of the law as enacted by the legislature, or whether in every respect absolute equality has obtained in contributions made by the employers. We think the provision is not so arbitrary as to offend the constitutional provisions.

We are constrained to hold, therefore, that the decree of the district court was correct, and the cause must be affirmed.— Affirmed.

MANTZ, C. J., and OLIVER, BLISS, MILLER, GARFIELD, WENNERSTRUM, and MULRONEY, JJ., concur.

SMITH, J., takes no part.