Iowa Mutual Tornado Insurance Association, appellee, v. Charles R. Fischer, commissioner of insurance, et al., appellants.

No. 48447.

(Reported in 65 N.W.2d 162)

952

Leo A. Hoegh, Attorney General, and Kent Emery, Assistant Attorney General, for appellants.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee.

GARFIELD, J.—The question for decision is whether sections 518.35 and 432.1(2), Code, 1950, compel plaintiff, a mutual insurance assessment association organized under Code chapter 518, to pay a two per cent premium tax upon post-loss assessments against policyholders which are not collected. The trial court held plaintiff is not liable for a premium tax upon such uncollected assessments. We affirm the decision.

The case comes here upon the allegations of plaintiff's petition which are admitted by defendants' motion to dismiss. When plaintiff issues a policy against loss by windstorm and tornado the member insured pays a "policy and survey fee" of one dollar and a "contingent fee" of ten cents for each $100 of insurance on dwelling houses and contents and twice that rate for insurance on barns and other outbuildings. From time to time plaintiff's board of directors levies assessments against its members to provide funds for payment of losses previously

occurring or to restore sums used for payment of losses or for other lawful purposes. If such assessment is not paid within thirty days from the mailing of the third notice thereof the policy is canceled.

In 1950 on account of two severe windstorms plaintiff levied two such assessments. The first was for about $1,470,000 of which $49,000 was never received by plaintiff or paid by insured members. (Amounts stated herein are in round figures.) The second assessment was for about $2,800,000 of which $76,000 was never received by plaintiff or paid by insured members. The policies of all members who did not pay assessments after three notices thereof were canceled. In 1951 an assessment of $1,-800,000 was levied on December 1, 1951, of which $432,000 was not collected by plaintiff by December 31, 1951.

For 1950 plaintiff paid a premium tax of $95,000 and for 1951 a tax of $53,000 on fees, premiums and assessments actually collected by plaintiff in those years. Defendant insurance commissioner required plaintiff to pay in February 1952 an additional tax of $2400 for 1950 and $8500 for 1951 upon the amount of uncollected assessments. This added tax was paid under protest.

Since the enactment in 1900 of a law providing for a tax against companies such as plaintiff it had always reported and paid the tax on assessments collected, not on those which were not paid, until 1951. The insurance commissioner did not object to plaintiff's paying the tax on such basis until 1951 when the attorney general's office advised the commissioner that in its opinion an association operating under Code chapter 518 "is liable for a premium tax on post-loss assessment which has been levied but not yet collected."

The petition further alleges that insofar as the commissioner requires plaintiff to pay premium tax on assessments levied but not collected he is acting mistakenly and because of an erroneous interpretation of the applicable statutes, and he should be required to refund the added tax of $10,900 plaintiff paid under protest.

The ground of defendants' motion to dismiss is that the interpretation of the statutes under which the additional tax was asserted is not error.

It seems to be conceded that this action will lie if, as the trial court held, Code sections 518.35 and 432.1 do not subject plaintiff to a premium tax upon assessments levied but not collected. Plaintiff's liability for such a tax upon uncollected assessments is therefore the only matter presented.

Code chapter 518 is the chapter under which plaintiff was organized and exists. Section 518.35 thereof which the commissioner contends imposes the added tax plaintiff was compelled to pay provides, so far as material here: "Every state mutual association doing business under this chapter shall * * * pay * * * a sum equivalent to two percent of the *gross receipts from* premiums, assessments, fees, and promissory obligations for business done within the state * * * without including or deducting any amounts received or paid for reinsurance, but after deducting the amount returned upon canceled policies and rejected applications covering property situated within the state, and dividends returned to policyholders on property situated within the state." (Italics added.)

Code section 432.1, so far as here material, reads: "Every insurance company or association of whatever kind or character * * * shall * * * pay * * * as taxes, an amount equal to ? * * *

"Two percent of gross amount of premiums, assessments, and fees *received* * * * on contracts of insurance other than life for business done in this state * * * after deducting the amounts returned upon canceled policies, certificates and rejected applications." (Italics added.)

It is not suggested that section 432.1 imposes on plaintiff a two per cent premium tax in addition to a like tax provided for by section 518.35. In other words, there is no contention plaintiff is subject to premium taxes totaling four per cent under 518.35 and 432.1.

It would seem section 518.35 is in the nature of a special statute applicable solely to mutual assessment insurance associations such as plaintiff and therefore would control and take precedence over the general statute, 432.1, which applies to "Every insurance company or association of whatever kind or character," with certain exceptions not here material. This would appear particularly true since 518.35 is the later enactment.

See State ex rel. Weede v. Iowa Southern Utilities Co., 231 Iowa 784, 830, 2 N.W.2d 372, 396, and citations; 82 C. J. S., Statutes, section 369.

■ A fundamental rule is that where a general statute, if standing alone, would include the same matter as a special act and thus conflict with it, the special act will be considered an exception to the general statute, whether it was passed before or after such general enactment. Yarn v. City of Des Moines, 243 Iowa 991, 998, 54 N.W.2d 439, 443, and citations; 82 C. J. S., Statutes, section 369, pages 843, 844.

The rules just mentioned that a special statute will prevail over a general one apply only where the two are repugnant or inconsistent. Of course it is not necessary to apply such a rule where the two acts are consistent. See authorities, supra, and Ervin v. Triplett, 236 Iowa 272, 276, 18 N.W.2d 599, 601. It would seem that if section 518.35 does not impose the tax here involved and section 432.1 purports to do so, the two provisions would conflict and 518.35 would control.

It is perhaps not important here that section 518.35 would prevail in the event of conflict with 432.1 because we think neither section imposes the added tax plaintiff paid under protest.

■■ Under numerous decisions in Iowa and the authorities generally sections 518.35 and 432.1 should be strictly construed against the taxing body—liberally in favor of the taxpayer. It must appear from the language of the statute the tax assessed was clearly intended. Taxing statutes will not be extended by construction or implication beyond the clear import of the language used. See Dain Mfg. Co. v. Iowa State Tax Comm., 237 Iowa 531, 533, 22 N.W.2d 786, 788; Merchants Supply Co. v. Iowa Employment Sec. Comm., 235 Iowa 372, 378, 16 N.W.2d 572, 576; Moorman Mfg. Co. v. Iowa Unemployment Comp. Comm., 230 Iowa 123, 130, 296 N.W. 791, 794; Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N.W. 415, 416; Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211, 213; Cochrane v. Bankers Life Co., 8 Cir., Colo., 30 F.2d 918, 921; Converse v. Northern Pac. Ry. Co., 8 Cir., N. D., 2 F.2d 959, 960; 2 Cooley on Taxation, Fourth Ed., sec-

tion 503; 84 C. J. S., Taxation, section 58b, page 158; 82 C. J. S., Statutes, section 396(b) and (c), pages 948 et seq.; 51 Am. Jur., Taxation, sections 308, 310.

 Section 518.35 taxes "the gross receipts from premiums, assessments, fees, and promissory obligations for business done within the state." The disputed tax here was upon assessments. But the statute imposes a tax only upon the gross receipts from assessments—not upon assessments. We cannot say from the language of 518.35 that a tax upon uncollected assessments was clearly intended.

The effect of defendants' argument is to ask us to read out of the statute the words "gross receipts from" and give them no meaning. Presumably these words were used advisedly. If fairly possible, it is our duty to give them effect. See Chappell v. Board of Directors, 241 Iowa 230, 232, 39 N.W.2d 628, 629; In re Guardianship of Wiley, 239 Iowa 1225, 1228, 34 N.W.2d 593, 594, and citations; Hartz v. Truckenmiller, 228 Iowa 819, 824, 293 N.W. 568; 82 C. J. S., Statutes, section 346; 50 Am. Jur., Statutes, sections 231, 358.

Defendants argue that the insured agrees when his policy is written to pay such assessments as may properly be made. It is said this amounts to the extension of credit for the assessments which are taxable to the same extent as assessments that are collected.

If it be true that insured members are obligated to pay assessments properly levied, such agreements are in the nature of "promissory obligations", within the meaning of section 518.35. Just as the statute does not impose a tax upon assessments but only upon the gross receipts therefrom, so does it not impose a tax upon promissory obligations but only upon the gross receipts from the obligations. Statutory authority for a tax upon the gross receipts from promissory obligations affords no clear basis for a tax upon the obligations which are not collected. If the legislature desires to tax the assessments, rather than the receipts therefrom, it can readily do so. It is not our province to do it under the guise of interpretation.

 Assuming, without deciding, plaintiff would be liable for the disputed tax if section 432.1 purports to impose one, even

though section 518.35 imposes no such tax, we think 432.1 does not subject plaintiff to a tax on uncollected assessments. Section 432.1(2) taxes "the gross amount of premiums, assessments, and fees received * * * on contracts of insurance * * * for business done in this state." It does not tax the gross amount of assessments. The legislature has not clearly indicated its purpose to tax uncollected assessments. Such assessments are not received. Defendants would have us ignore the word "received" and give it no meaning.

Defendants cite In re Continental Casualty Co., 189 Iowa 933, 179 N.W. 185 (Evans, J.), and say it is the only decision with any substantial relation to the question here involved. We think it does not support defendants' position here. The State there sought to collect a premium tax under section 1333, Code Supplement, 1913 (section 7022, Code, 1939), now, with some changes, part of section 432.1, Code, 1950, upon premiums received in the first instance by the company but afterwards returned to policyholders upon cancellation of their policies. We denied the claim of the State.

The opinion states (commencing page 937 of 189 Iowa): "The argument for the State rests upon two general grounds. The first is that the item in question is covered by the literal terms of the statute, and that there is no fair room for a different construction. We cannot adopt this view. While it is true, in a literal sense, that the company did receive these premiums from the policyholders in advance of their earning, it is also true, in a legal sense, that it received the same subject to the right of the policyholders to demand the return, upon a cancellation of their policies at any time before the earning of the premium. * * * The only fair construction of the statute, therefore, is that 'premiums received' can refer only to those premiums which the company has a right to retain, as its own absolute property. There is a quality of unreasonableness in the contrary contention which forbids its adoption, unless required by the clear direction of the statute. We have little hesitancy in sustaining the trial court at this point. The construction which we thus put upon our statute is in accord with the holding of other courts in the construction of similar statutes [citing cases]."

The second ground of the argument for the State in the Continental Casualty Company case was that chapter 56, Acts 32d General Assembly, added an express proviso to the statute there considered, applicable only to fire insurance companies, that premiums returned upon canceled policies may be deducted, in computing the tax, from the gross amount of premiums received. We rejected the argument that this proviso, by implication, required the inclusion of returned premiums as to all companies other than fire companies.

■ Defendants assert the Casualty Company case held "that 'premiums received' did not mean premiums coming into the hands of the insurer but premiums earned by the insurer." The statement is incorrect. The holding was that premiums received in the first instance are not received within the meaning of the statute there considered to the extent that they are unearned and returned to policyholders upon cancellation of the policies. In other words, "premiums received" are those that are collected "which the company has a right to retain, as its own absolute property." The precedents cited in the Casualty Company case (page 938 of 189 Iowa), and others, fully support the decision. See 2 Cooley on Taxation, Fourth Ed., section 941.

We are cited to no authority clearly in point on the question before us nor have we found any in a careful search. There is language in several opinions that supports our holding. For example, in German Alliance Ins. Co. v. VanCleave, 191 Ill. 410, 415, 61 N.E. 94, 96, a case similar to our Casualty Company case, cited with approval therein, it is said of a statute like section 432.1 imposing a tax upon "the gross amount of premiums received": "The apparent purpose of the act is to levy a tax on gross income, and not upon money which is in no sense revenue to the insurance companies."

People ex rel. Continental Ins. Co. v. Miller, 177 N. Y. 515, 520, 70 N.E. 10, 11, another decision like our Casualty Company case, quoted from with approval at pages 938, 939 of 189 Iowa, says of a statutory tax on "the gross amount of premiums received": "We think the use of the word 'gross' was intended to include all premiums that remain in the treasury of the company and to exclude any deductions for the commissions of agents or the expenses of doing business."

State ex rel. v. Continental Ins. Co., 67 Ind. App. 536, 548, 116 N.E. 929, 932, also cited with approval on page 938 of 189 Iowa, states: "* * * this statute * * * puts upon the company the duty to report for taxation 'the gross amount of all premiums received in the State of Indiana * * * for the six months last preceding.' That the statute does not require the company to pay taxes on premiums never received is too plain to require elucidation. It follows, then, that the company had the right to deduct from its book entries of gross premiums the amount of premiums represented by the 'flat' cancellations—the latter, never having been received, are not taxable under the statute."

In Maryland Casualty Co. v. United States, 251 U. S. 342, 346, 40 S. Ct. 155, 157, 64 L. Ed. 297, 301, there was a tax against insurance companies upon income received during each year. "The Government * * * contended that the claimant should return the full amount of premiums on policies written in each year, whether actually collected or not." The contention was rejected by the court of claims and the supreme court which held the tax was not upon all premiums but upon all that were actually received by the company or its agents during the year.

This from State v. Hibernia Ins. Co., 38 La. Ann. 465, 467, has application here: "But we think it very clear that in using the term 'gross amount of premiums,' the law refers to premiums actually received and earned; and as, by the terms of their contracts, the companies allowing such rebates only receive the difference between the premium stipulated and the rebate, it seems clear that such difference, only, constitutes the gross premiums earned."

We note that the statutes of some states differ from our sections 518.35 and 432.1. For example, a Colorado statute taxed "the gross amount of all premiums collected or contracted for." See Prudential Ins. Co. of America v. Kavanaugh, 125 Colo. 93, 240 P.2d 508. New York and Pennsylvania statutes taxed " 'the gross amount of premiums received * * * whether such premiums were in the form of money, notes, credits, or any other substitute for money * * *.' " See People ex rel. Continental Ins. Co. v. Miller, supra, 177 N. Y. 515, 517, 70 N.E. 10; Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510, 98 A. 1072.

Indeed section 7021, Iowa Codes 1924 through 1939, imposed a tax upon "the gross amount of premiums received * * * in cash, promissory obligation, or other form of settlement * * *." Section 7021 was superseded by the present Code section 432.1, heretofore quoted so far as material here.

■ Defendants are not entitled to the benefit of any administrative construction of the applicable Iowa statutes to support the commissioner's present position. Of course courts will not give weight to administrative construction of a statute or invoke other extrinsic aids to construction unless the meaning of the statute is really doubtful. Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 240 Iowa 734, 742, 35 N.W.2d 848, 852; 82 C. J. S., Statutes, section 359b, pages 771 et seq.; 50 Am. Jur., Statutes, sections 225, 319.

Further, there is no long-standing administrative construction shown that supports the commissioner's contention. As previously stated, the petition alleges and the motion to dismiss admits the commissioner did not object until 1951 to payment of the tax on assessments collected, not on those which were unpaid. Principal basis for the commissioner's present position seems to be a letter to him from an assistant attorney general in 1951, which in turn appears to be largely based upon an attorney general's opinion dated June 14, 1924, found in 29 I. C. A., pages 95 to 97.

The 1924 opinion advised the then commissioner that the premium tax imposed by section 1333, Code Supplement, 1913 (section 7022, Code, 1924), should be paid on premiums for the year in which the policies took effect rather than for the year in which the actual consideration was received by the insurer. However, the commissioner's query which led to the opinion stated: "It should be kept in mind that any premiums reported as written which are not received and which are subsequently charged off the books are allowed the companies as a deduction for the period for which the charge-off is made."

The attorney general was not asked in 1924 for an opinion as to whether a premium tax should be paid on premiums never received. Indeed he was advised that the commissioner allowed companies to deduct such uncollected premiums from the amount

ultimately taxed. The question was whether the tax should be reported and paid in one tax year or a later year. The 1924 opinion appears to be largely based upon In re Continental Casualty Co., supra, 189 Iowa 933, 179 N.W. 185, heretofore fully considered by us.—Affirmed.

All JUSTICES concur.