SHELBY COUNTY MYRTUE MEMORIAL HOSPITAL, appellant, v. HARRISON COUNTY, appellee.

No. 49287.

(Reported in 86 N.W.2d 104)

NOVEMBER 12, 1957.

William O. Lewis, County Attorney, Shelby County, of Harlan, for appellant.

John W. Kellogg, County Attorney, Harrison County, of Missouri Valley, for appellee.

THOMPSON, J.—We are concerned here with the construction of certain statutes having to do with the support of the poor, and with the powers of county hospitals. Plaintiff's petition alleges its status as a county public hospital established and operating in Harlan, Shelby County, Iowa, under the provisions of chapter 347 of the Code of 1954. Further allegations are that Nancy Jane Ehlers is an indigent person with a legal settlement in the defendant-county; that during the year 1955 the said indigent received benefits and services in the plaintiff's hospital upon five different occasions—January 2 to 5 inclusive; February 22 to 27 inclusive; April 30 to June 27 inclusive; August 20 to September 1 inclusive; and September 14 to October 2 inclusive.

The petition further pleads that the defendant paid the bills incurred for the first, second and fourth periods, but has refused to pay those for the third and fifth, and that there is due and unpaid from the defendant the total sum of $1195.85, which is the reasonable cost of the care, treatment and hospitalization furnished the said Nancy Jane Ehlers, and that this is a liability created by section 347.16 of the Code. Judgment for the above sum, with interest and costs, is prayed.

Defendant moved to dismiss the petition "on the grounds that it fails to state a cause of action in that there is no allegation that notice was served on the Auditor of Harrison County, Iowa, as provided by Section 252.22 of the 1954 Code of Iowa." This motion was sustained by the trial court, which quoted from

section 252.22: "All laws relating to the support of the poor, provided by this chapter, shall be applicable to care, treatment and hospitalization provided by county public hospitals." The court then said that the claim of the plaintiff is the claim of a county public hospital, and that the notice required by section 252.22 had not been served and the service of said notice is a prerequisite to an action to collect for such hospitalization. Plaintiff did not elect to plead over, but appealed to this court from the judgment of dismissal.

I. The controversy here involves the construction to be placed upon two statutes. It is the major contention of the plaintiff that it has the right to bring its action, without service of the notice upon the county auditor of the county of settlement, by virtue of section 347.16, particularly that part of it which says: "Provided, however, such county public hospital may provide hospital benefits to indigent persons having a legal settlement outside the county *and the county of such persons' legal settlement shall pay to such county public hospital for the fair and reasonable cost of such care, treatment, and hospitalization.*" (Italics supplied.)

We have, therefore, section 252.22, a part of chapter 252, relating to the support of the poor, and section 347.16, defining the powers and duties of county public hospitals, which must be reconciled; or, that failing, we must determine which expresses the true legislative intent. The defendant relies upon chapter 252, particularly section 252.22; the plaintiff upon section 347.16 of chapter 347. Chapter 252 defines who are poor persons; how settlements are acquired in counties; provides liabilities against certain relatives of such indigents; imposes certain duties upon township trustees and other local officers; contains the stern provisions of our law for giving notice to depart from a county to persons thought to be likely to become county charges, for the purpose of preventing them obtaining a legal settlement in the warning county; and, most important here, provides in section 252.22 that if relief is granted to a poor person having a settlement in another county, the auditor of the granting county shall at once notify by mail the auditor of the county of settlement of such grant. It is the failure of the plain

tiff's petition to allege the giving of such notice which the defendant and the trial court hold make a fatal defect and show that no cause of action is pleaded.

Prior to 1947, section 252.22 made provision for the notice as referred to last above, but did not have the clause which the trial court quoted and relied upon, as set out above, purporting to make all laws for the support of the poor provided by chapter 252 applicable to county public hospitals. Nor did chapter 347, relating to county public hospitals, contain the provision permitting such hospitals to care for indigents with settlements in other counties and requiring such counties to pay the hospital therefor. Before this time, county public hospitals were not authorized to care for poor persons with settlements in other counties.

Oddly enough, the Fifty-second General Assembly in 1947 amended sections 347.16 and 252.22 by the same Act, chapter 191 of its laws. Since these amendments and one other, to be referred to later, are vital to our determination of the issue before us, we set out chapter 191, Acts of the Fifty-second General Assembly:

"CHAPTER 191. COUNTY PUBLIC HOSPITALS. H. F. 495.

"AN ACT to provide for county public hospitals to provide care of indigent persons having legal settlement outside of the county furnishing such care, and to further provide for the collection of such costs from the county wherein the patient has a legal settlement or persons legally liable for such support.

"Be It Enacted by the General Assembly of the State of Iowa:

"SECTION 1. Amend section three hundred forty-seven point sixteen (347.16), Code 1946, by striking the word 'only' from line ten (10) and by inserting the following after line fourteen (14) thereof: 'Provided, however, such county public hospital may provide hospital benefits to indigent persons having a legal settlement outside the county and the county of such persons' legal settlement shall pay to such county public hospital for the fair and reasonable cost of such care, treatment, and hospitalization.'

"SEC. 2. Amend section two hundred fifty-two point

twenty-two (252.22), Code 1946, by adding thereto the following: 'All laws relating to the support of the poor as provided by this chapter shall be applicable to care, treatment, and hospitalization provided by county public hospitals.'

"Approved April 22, 1947."

It will be noted that in the same Act the legislature added the amendments to sections 347.16 and 252.22 which form the substantial basis for the controversy here. To the previous powers of county hospitals it added that of caring for indigents from other counties; and to section 252.22 the provision that all Acts relating to the support of the poor are applicable to county hospitals. These provisions have since appeared in the Codes of 1950 and 1954. The two cannot be wholly reconciled. It will be noted that when indigents having settlements in other counties are cared for by the county hospital, the settlement county "shall pay to such county public hospital for the fair and reasonable cost of such care, treatment, and hospitalization." The laws relating to the support of the poor as set out in chapter 252 all contemplate, when aid is furnished by an agency to a nonresident indigent, that "* * * such relief shall be deemed to have been furnished by the county in which such agency is located * * * ". Code section 252.24. This makes the county where the relief is furnished the creditor and the county of settlement the debtor. The furnishing county must give the prescribed notice and collect from the county of settlement. This would be the necessary procedure if the amendment making all care furnished by a county public hospital subject to the general provisions of chapter 252 in all respects is to be taken literally. But the amendment to section 347.16 says the county of settlement shall pay to the hospital, rather than to the county. The two amendments were not only enacted at the same time by the same legislature, but in the same chapter.

Another amendment to section 347.16 was enacted by the Fifty-fifth General Assembly in 1953. The Act made certain provisions for the care of tubercular persons; then for the care of resident indigents, and for the method of determining whether they are in fact indigent. Next it is provided that the cost of such care shall be the liability of the county, and upon proper

claim therefor shall be paid as provided by section 252.35. Following is this: "Provided, however, such county public hospital may provide hospital benefits to indigent persons having a legal settlement outside the county and the county of such persons' legal settlement shall pay to such county public hospital for the fair and reasonable cost of such care, treatment, and hospitalization."

It will be observed that the language last quoted from chapter 156, section 2, Acts of the Fifty-fifth G. A., is identical with section 1, chapter 191, Acts of the Fifty-second G. A., which had been a part of the law of Iowa for some six years. It amounted to a re-enactment of the existing law; and while we may not be certain of its purpose, it is clear that it does add emphasis and that it gives some later expression of the legislative intent.

II. However, we need not analyze the extent to which the re-enactment of section 1, chapter 191, supra, as a part of chapter 156, supra, makes it a later statute than section 2, of the same chapter 191. It is a fundamental rule that in construing statutes the courts look first to the language used. The question is not what the legislature should have said, or what it might have intended to say, but what it did say. Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 680, 6 N.W.2d 6, 14; Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 618, 226 N.W. 182, 184. But our difficulty in the case at bar arises not so much from obscurity of language used or real doubt as to its meaning, but from the fact that sections 1 and 2 of chapter 191 of the Acts of the Fifty-second General Assembly, which we have pointed out, are plain in their language and upon the point now under consideration are irreconcilable. Section 1 says that when benefits are furnished by a county public hospital to an indigent with settlement in another county, such county *shall pay to such county public hospital* the reasonable cost thereof. The statute requires payment to the hospital, not to the county in which it is located. But section 2, interpreted according to its language, says that all laws relating to the support of the poor under chapter 252 shall apply to care, treatment and hospitalization provided by county public hospitals. This means that the county hospital, when it undertakes to furnish benefits to an indigent whose settlement is in another

county, must follow the procedure outlined in chapter 252. So it would be required to file its claim against its own county and collect from it. The county of settlement would pay, not to the county public hospital, but to the county by whose public hospital the care was supplied. This was the construction adopted by the trial court.

Under these circumstances, another well-established rule of statutory construction comes into operation. When a general statute is in conflict with a special statute, the latter prevails. The provision in section 2, chapter 191, now a part of section 252.22, is a general statute. All laws relating to the support of the poor as set forth in chapter 252 of the Code are made applicable to county public hospitals. These laws include a definition of a "poor person"; provisions making relatives liable for support of such person; what is meant by a "legal settlement" and how it is acquired; how long it continues; how a county into which a poor person who has no legal settlement there comes may give notice to him to depart, and thus protect itself against him gaining a settlement; provisions concerning foreign paupers; statutes important in the instant case concerning how and by what procedure one county must proceed if it wishes to hold the purported county of settlement liable for support the first county renders an indigent; and other provisions not greatly significant here.

It thus appears that section 2, chapter 191, makes many provisions of chapter 252 applicable to care furnished by county public hospitals. It is a general statute. So, if such a hospital furnishes care to a supposed indigent from another county, the provisions of chapter 252 defining settlements will apply, and the hospital takes the risk that the poor person actually has a settlement in the county which it attempts to charge. Other provisions of chapter 252 are likewise applicable. But when we reach the point of collecting for the care furnished, assuming that a settlement is shown, we encounter section 1 of chapter 191, now a part of section 347.16 of the Code. This is a special provision concerning payment. It is in conflict with section 2 of the same chapter, which is to say with section 252.22 of the Code. Section 2 makes no exception to the general provision

that all laws in chapter 252 apply to county public hospitals; but section 1 says that payment shall be made directly by the county of settlement to the hospital. It is a special provision which cannot be reconciled with a general law; and we have often said that under such circumstances the special statute will prevail. Section 2, chapter 191, deals with the subject in a general way and makes several provisions of the statute applicable; section 1 is concerned only with a small part of the same subject, the liability for, and method of, payment.

It is true the rule applies only if there is a conflict between the general and special statutes. Iowa Mutual Tornado Insurance Assn. v. Fischer, 245 Iowa 951, 955, 65 N.W.2d 162. But we have indicated above that the two statutes are irreconcilable. We have also held that the special statute will govern whether enacted before or after the general one. Iowa Mutual Tornado Insurance Assn. v. Fischer, supra; Yarn v. City of Des Moines, 243 Iowa 991, 998, 54 N.W.2d 439, 443. The governing principle is likewise laid down, with a considerable citation of authorities, in Crawford v. Iowa State Highway Comm., 247 Iowa 736, 739, 740, 741, 76 N.W.2d 187; and in Liberty Consolidated School District v. Schindler, 246 Iowa 1060, 1065, 70 N.W.2d 544, 547 ("the special Act will be considered an exception to or qualification of the general statute and will prevail over it, whether it was passed before or after such general enactment"). To the same effect are State ex rel. McPherson v. Rakey, 236 Iowa 876, 878, 879, 20 N.W.2d 43, 45; Ervin v. Triplett, 236 Iowa 272, 276, 18 N.W.2d 599, 601; and State ex rel. Rankin v. Woodbury County, 231 Iowa 356, 1 N.W.2d 223, 224. See also 59 C. J., Statutes, section 623, 82 C. J. S., Statutes, section 299, and 50 Am. Jur., Statutes, section 564.

It is our holding that section 2 is a general law which cannot be reconciled with section 1, a special statute dealing with a part of the same subject, and that section 2 must give way.

 III. It follows that the plaintiff-hospital was not required to adopt the procedures for collection of its account outlined in chapter 252, but is permitted to collect directly from the defendant. Of course we have here been dealing only with questions raised by the pleadings, and so, in accord with the established rule, we have considered all well-pleaded allegations of

the petition as true; Truax v. Ellett, 234 Iowa 1217, 1219, 15 N.W.2d 361, 362; Abbott v. City of Des Moines, 230 Iowa 494, 498, 298 N.W. 649, 651, 138 A. L. R. 120, 123. The trial court was in error in granting the defendant's motion to dismiss.

In view of our holding above we find it unnecessary to consider other points urged by the plaintiff. Defendant's contention that to permit the sort of action brought by plaintiff without notice to the county of settlement might subject it to serious expense which it has no means of preventing or controlling is a matter for legislative rather than judicial consideration.

The cause is remanded for further proceedings in accordance with this opinion.—Reversed and remanded.

All JUSTICES concur.