**LIFELINE AMBULANCE, INC., Appellant,**

v.

**IOWA INSURANCE DIVISION, Appellee.**

**University Health Care Plan of Iowa d/b/a Surecare, Intervenor.**

No. 92–1534.

Supreme Court of Iowa.

Aug. 25, 1993.

Thomas R. Bernau of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Debra West, Asst. Atty. Gen., for appellee.

Donald A. Wine and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for intervenor.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

At issue on this appeal is an order of the Iowa Insurance Commissioner upholding action by a health maintenance organization retroactively terminating a group health insurance plan for the employees of appellant, Lifeline Ambulance, Inc. (Lifeline Ambulance). Lifeline Ambulance urged, both before the agency and in the district court, that the attempted termination of the agreement was not properly carried out because the employee-members of the plan had not received notice as required by statute. The proceeding is for review of agency action pursuant to Iowa Code section 17A.19 (1987). The district court upheld the agency decision. We reverse.

The controversy involves an attempt by the intervenor, University Health Care Plan of Iowa, a health maintenance organization organized under Iowa Code chapter 514B (the HMO), to terminate a group contract with Lifeline Ambulance. The basis for the attempted termination of the contract was a default in the payment of premiums due under the plan. On February 2, 1989, the HMO notified Lifeline Ambulance that because of a default in the payment of premium its contract was canceled retroactive to December 31, 1988, the date to which premiums were last paid. Later, this notice was revised to provide that cancellation was retroactive to November 30, 1988, because that was in fact the last date to which premiums had been paid.

The HMO gave no notice to the individual employee enrollees under the group contract that their health care benefits were being terminated. It is that circumstance that gives rise to Lifeline Ambulance's primary contention on appeal that benefits under the plan were not properly terminated. Additional facts material to the issues on appeal will be set forth in our discussion of the points of law raised by the parties.

I. *Distinction Between Termination of Group Contract and Termination of Coverage for Individual Employees.*

At the outset, we must clarify the conflicting claims of the parties concerning the distinction between termination of the employer's group contract with the HMO and termination of the coverage for individual employees enrolled under the group plan. We begin this discussion by expressing our belief that these two matters are in fact inseparable. There is no realistic way of viewing the existence of a group medical plan other than through its effect on the members of the group.

■ Lifeline Ambulance urges, with support in the record, that it is pursuing this challenge as the agent of its employees pursuant to a specific contract clause. Its right to do so was acknowledged by the administrative law judge who heard this matter pursuant to contested case procedure. In determining the merits of the challenge to contract termination, however, both the administrative law judge and the insurance commissioner determined that notice to the employees covered by the plan was not necessary in order to terminate their rights under the group contract.

The administrative law judge appeared to conclude that Lifeline Ambulance's employees were "enrollees" as defined in section 514B.1(4). He concluded, however, that language contained in Iowa Code section 509B.5(2) (1987) makes the enrollee-notice requirement of section 514B.17 inapplicable to enrollees under group contracts. The administrative law judge ruled that section 509B.5(2) provides that: (1) the employer, rather than the HMO, is to give notice to the employees of termination of the group contract; (2) the HMO's liability to members of the group ends immediately upon the termination of the group plan (or possibly prior thereto); and (3) until the employer gives notice to the employees that the group contract has been canceled, it remains solely responsible for providing health care benefits under the plan. The insurance commissioner in a brief order stated that the decision of the administrative law judge "is upheld in its entirety." Language in that order, however,

indicates some doubt on the part of the commissioner that Lifeline Ambulance had standing to pursue claims of legal entitlement on the part of its employees.

We conclude that Lifeline Ambulance does have standing to argue that its employees were entitled to notice of termination of benefits under section 514B.17. The group contract makes it the agent of its employees for this purpose. Moreover, due in part to the legal reasoning of the agency and the district court concerning Lifeline Ambulance's personal liability under section 509B.5(2), it has a personal stake in the impending controversy.

II. *Termination of the Group Contract According to its Terms.*

Lifeline Ambulance has challenged whether the group contract was properly terminated by the HMO pursuant to its terms. The agency and the district court concluded that it was. On this issue, the controversy centers on the legal consequences of a tender of certain checks by Lifeline Ambulance and the HMO's refusal to accept those checks.

The group contract between Lifeline Ambulance and the HMO provides that it may be canceled by the latter if Lifeline Ambulance fails to prepay the applicable premium for a period of thirty days. It further provides that "[o]n the occasion of the second default of premium [the HMO] retains the right to refuse acceptance of premium for the period charged and retains the right to cancel group coverage for that reason." The record reveals that there had been several defaults of premium prior to the HMO's refusal of Lifeline Ambulance's checks. This refusal and return of checks was accompanied by a written notice purporting to terminate the contract.

■ Unless otherwise regulated by statute, the parties to an agreement may specify therein circumstances or conditions that empower a party to terminate the contract. *Artificial Ice Co. v. Reciprocal Exch.*, 192 Iowa 1133, 1140, 184 N.W. 756, 759 (1921); *Medford v. Pacific Nat'l Fire Ins. Co.*, 189 Or. 617, 624, 219 P.2d 142, 147 (1950) (absent controlling statute, parties may make such

contract as they desire concerning method of cancellation); 43 Am.Jur.2d *Insurance* § 383 (1982). The parties to the present agreement did that. The evidence clearly established that one of the conditions for termination, *i.e.*, repeated default of premium, occurred. Lifeline Ambulance has suggested no statute that would preclude the inclusion of this ground of termination in the contract.

We agree with the agency and the district court that the group contract was properly terminated by the HMO in accordance with its terms. For reasons that are set forth in the following division, however, termination of the group contract, although a ground for termination of the rights of the individual employee-enrollees, may not automatically work a termination of those rights. We must also consider the applicability of statutory notice requirements to the employee-enrollees.

### III. *Notice Requirements to Individual Enrollees Under Section 514B.17.*

Lifeline Ambulance argues that irrespective of whether the group policy was terminated according to the contractual language, the rights of the individual enrollees have not been effectively terminated because the HMO failed to give them the notice of termination required by law. The statute on which this claim is based provides, in part:

> An enrollee shall not be canceled except for the failure to pay the charges permitted under section 514B.10 or for other reasons stated in the rules promulgated by the commissioner and subject to review in accordance with chapter 17A. No notice of cancellation to an enrollee shall be effective unless delivered to the enrollee by the health maintenance organization in a manner prescribed by the commissioner and at least thirty days before the effective date of cancellation and unless accompanied by a statement of reason for cancellation.

Iowa Code § 514B.17 (1987).

■ The agency and the intervenor—HMO urge that, although they are members of the group plan, Lifeline Ambulance's employees are not "enrollees" of the HMO as that term is defined in chapter 514B. They argue in the alternative that, if these employ-

ees are "enrollees," the enrollee-notice requirement of section 514B.17 does not apply to members of group plans.

The term "enrollee" is defined for purposes of chapter 514B as "an individual who is enrolled in a health maintenance organization." Iowa Code § 514B.1(4) (1987). It is contemplated that there be enrollment of individuals through group contracts. Iowa Code § 514B.3(7) (1987). In spite of appellees' arguments to the contrary, we see no way of escaping the conclusion that Lifeline Ambulance's employees are "enrollees" of the HMO.

■ Concerning the alternative argument that the enrollee-notice provision of section 514B.17 does not apply to members of group plans, we find that contention is counter to the agency's own regulations on this point. It is provided in 191 Iowa Administrative Code 40.10(1)(a) and (c) that enrollees' coverage may be canceled for (1) nonpayment of charges by an individual enrollee, or (2) termination of a group contract under which the enrollee was enrolled. With respect to termination for *either* of these reasons, however, another regulation of the agency implements the requirement of section 514B.17 that a thirty-day notice of termination must be delivered to the enrollee by the health maintenance organization. 191 Iowa Admin.Code 40.10(3).

We are unable to conclude, as did the agency and the district court, that the notice requirement of section 514B.17 is somehow nullified by section 509B.5(2). The language of the latter statute upon which that claim is based reads as follows:

> [I]f accident or health insurance for employees or members is terminated for failure to pay premiums or for another reason, the employer or group policyholder shall notify the employees or members, including persons being continued under the policy's continuation provisions, of the termination or substantial modification of their coverage. The notice shall be in writing and delivered in person to the entitled persons or mailed to their last known addresses at least ten days prior to the termination or substantial modification of

the accident or health insurance coverage. *The employer or group policyholder is solely liable for benefits, including extended benefits, other than extended benefits for which the insurer is liable in accordance with the provisions of the group policy, which would have been payable had the accident or health insurance remained in force or not been terminated* or substantially modified during the period of time following the termination or substantial modification until the person entitled to notice is given notice by the employer or group policyholder as required by this subsection.

Iowa Code § 509B.5(2) (1987) (emphasis added).

The agency and the intervenor-HMO urge that the italicized language makes an employer or group policyholder solely responsible (to the exclusion of any continuing obligation of the HMO) after the group contract has been terminated in accordance with its terms. They argue that the apparent conflict between their legal theory and section 514B.17 may be ignored because section 509B.5(2) was enacted after section 514B.17 and thus impliedly repeals any applicability of the latter statute with respect to termination of group contracts.

■ If we were confronted with a situation in which two statutes clearly conflicted concerning a material legal claim in the case, we would, in this instance, be prompted to give controlling force to section 514B.17. It is a specific statute dealing with the termination of enrollee benefits for any reason. Section 509B.5(2) is a more general statute that does not specify the procedure for termination of HMO benefits. We have recognized that, if a general statute would · include the same subject matter as a special statute and thus conflict with it, the special statute will be considered to be controlling whether enacted before or after the general statute. *Liberty Consol. Sch. Dist. v. Schindler,* 246 Iowa 1060, 1065, 70 N.W.2d 544, 547 (1955); *Iowa Mut. Tornado Ins. Ass'n v. Fischer,* 245 Iowa 951, 955, 65 N.W.2d 162, 165 (1954). It is not necessary to rely on this rule of statutory interpretation, however, because we do not find that the statutes in question conflict in their application to the present dispute. The provisions of section 509B.5(2) upon which appellees rely are not applicable unless the employees' benefits have first been terminated. That termination, as to any employee, does not occur until the HMO has given the thirty-day notice that is mandated by section 514B.17 and 191 Iowa Administrative Code 40.10(3). The agency and the district court erred in not acknowledging that requirement for employee benefit termination.

## IV. *Contractual Allocation of Liability to the Enrollees.*

■ As a final matter, we must consider the argument of the agency and the intervenor-HMO that the group contract provides that, if the applicable premium is not paid "for a period exceeding thirty days, the individual subscribers and members shall be liable for payment of any services received during the thirty-day period." The answer to any claim of the HMO under that contract clause is that statutory requirements for termination of benefits necessarily override conflicting contractual clauses. *Freeman v. Bonnes Trucking, Inc.,* 337 N.W.2d 871, 877 (Iowa 1983) (the case of financially unstable employer with employees going forward with their work in belief they have medical insurance provides graphic illustration of wisdom of requiring notice of cancellation); *Artificial Ice Co.,* 192 Iowa at 1140, 184 N.W. at 759. We have considered all issues presented and hold that the contractual rights of the individual enrollees to benefits under the group contract were not terminated in the manner required by law.[1] Consequently, we reverse the judgment of the district court and the final order of the agency that determined that such rights had been terminated.

**REVERSED.**

---

1. Because we hold that the absence of the thirty-day notice to the individual enrollees by the HMO leaves the latter's rights in force, we need not consider the legal consequences of the additional provision in § 514B.17 pertaining to the enrollees' right to tender the amount of premium due.